THOMAS J. NOLAN (SBN 66992)
thomas.nolan@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
CARL A. ROTH (SBN 151517)
carl.roth@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

*Attorney for Defendant*
*Questcor Pharmaceuticals, Inc.*

ANDREW J. BROWN (SBN 160562)
andrewb@rgrdlaw.com
ROBERT K. LU (SBN 198607)
rlu@rgrdlaw.com
ERIK W. LUEDEKE (SBN 249211)
eluedeke@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUESTCOR PHARMACEUTICALS, INC. SECURITIES LITIGATION | CASE NO.: NO. 8:12-CV-01623 DMG (JPRx) |
| | (1) DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS ; |
| | (2) JOINT STIPULATION ADDRESSING DEFENDANT'S MOTION TO COMPEL; |
| | (3) DECLARATION OF VIRGINIA F. MILSTEAD (separate cover); AND |

961695_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

(4) DECLARATION OF ERIK W. LUEDEKE (separate cover)

Magistrate Judge:  Jean P. Rosenbluth
Courtroom: 6A
Hearing Date: August 28, 2014
Hearing Time: 10:00 a.m.

Discovery Cutoff: December 19, 2014
Pretrial Conference: November 10, 2015
Trial Date: December 1, 2015

Scheduling order attached.

961695_1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28, 2014, or as soon thereafter as the matter may be heard, in Courtroom 6A of the above-referenced Court, located at 411 W 4th Street #1053, Santa Ana, CA 92701, Defendant Questcor Pharmaceuticals, Inc. ("Questcor" or "the Company") will, and hereby does, move the Court to compel further responses to Questcor's First Set of Interrogatories, and to produce documents pursuant to Questcor's First Request for the Production of Documents pursuant to Federal Rules of Civil Procedure 33, 34, and 37, as detailed herein.  Given Plaintiffs' tardy and incomplete response, Questcor reserves the right to move the Court to modify the scheduling order, including, but not limited to, the class certification motion deadlines.

This motion is based on this Notice of Motion and Motion to Compel Further Interrogatory Responses and Production of Documents (the "Motion to Compel"), the attached Joint Stipulation Addressing Defendant's Motion to Compel, the Declaration of Virginia F. Milstead in Support of Joint Stipulation Addressing Defendant's Motion to Compel, all pleadings and papers filed in this action, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this motion.

DATED:  August 6, 2014

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Peter B. Morrison_____
Peter B. Morrison
Attorneys for Defendant Questcor Pharmaceuticals, Inc.

i

961695_1

# **TABLE OF CONTENTS**

JOINT STIPULATION ....................................................................................1

I.    Questcor's Introductory Statement ................................................1

II.    Plaintiffs' Introductory Statement ................................................4

III.    Questcor's Motion to Compel Further Responses to Interrogatories ............7

    A.    Interrogatories at Issue and Responses .........................................7

        Interrogatory 1 .........................................................................7

        Plaintiffs' Responses and Objections ........................................8

        Interrogatory 3 .........................................................................8

        Plaintiffs' Responses and Objections ........................................8

    B.    Questcor's Argument ................................................................9

    C.    Plaintiffs' Argument ................................................................12

IV.    Questcor's Motion to Compel Production of Documents .........................18

    A.    Requests for Production 1-10 ....................................................18

        1.    Requests and Responses at Issue ....................................18

Document Request 1 ........................................................................18

Plaintiffs' Responses and Objections ...............................................18

Document Request 2 ........................................................................18

Plaintiffs' Responses and Objections ...............................................18

Document Request 3 ........................................................................19

Plaintiffs' Responses and Objections ...............................................19

Document Request 4 ........................................................................20

Plaintiffs' Responses and Objections ...............................................20

Document Request 5 ........................................................................20

Plaintiffs' Responses and Objections ...............................................20

Document Request 6 ........................................................................21

Plaintiffs' Responses and Objections ...............................................21

1

Document Request 7 ..........................................................................................22

2

Plaintiffs' Responses and Objections...............................................................22

3

Document Request 8 ..........................................................................................23

4

Plaintiffs' Responses and Objections...............................................................23

5

Document Request 9 ..........................................................................................23

6

Plaintiffs' Responses and Objections...............................................................23

7

Document Request 10 ........................................................................................24

8

Plaintiffs' Responses and Objections...............................................................24

9

    2.    Questcor's Argument.......................................................25

10

    3.    Plaintiffs' Argument .......................................................30

11

B.    Requests for Production 23-27, 33 ......................................35

12

    1.    Requests at Issue and Responses ....................................35

13

Document Request 23 ........................................................................................35

14

Plaintiffs' Responses and Objections...............................................................36

15

Document Request 24 ........................................................................................36

16

Plaintiffs' Responses and Objections...............................................................36

17

Document Request 25 ........................................................................................36

18

Plaintiffs' Responses and Objections...............................................................36

19

Document Request 26 ........................................................................................37

20

Plaintiffs' Responses and Objections...............................................................37

21

Document Request 27 ........................................................................................37

22

Plaintiffs' Responses and Objections...............................................................37

23

Document Request 33 ........................................................................................37

24

Plaintiffs' Responses and Objections...............................................................37

25

    2.    Questcor's Argument.......................................................38

26

    3.    Plaintiffs' Argument .......................................................41

27

28

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.   Questcor's Motion to Compel Production of Documents or Supplemental Responses to Document Requests 2-22, 28-30, 31-32, 34-36, and 43 ..................................................................................44

A.   Document Requests At Issue ...................................................44

Document Request 11 ...........................................................................44

Plaintiffs' Responses and Objections....................................................44

Document Request 12 ...........................................................................44

Plaintiffs' Responses and Objections....................................................44

Document Request 13 ...........................................................................44

Plaintiffs' Responses and Objections....................................................45

Document Request 14 ...........................................................................45

Plaintiffs' Responses and Objections....................................................45

Document Request 15 ...........................................................................45

Plaintiffs' Responses and Objections....................................................45

Document Request 16 ...........................................................................46

Plaintiffs' Responses and Objections....................................................46

Document Request 17 ...........................................................................46

Plaintiffs' Responses and Objections....................................................46

Document Request 18 ...........................................................................47

Plaintiffs' Responses and Objections....................................................47

Document Request 19 ...........................................................................47

Plaintiffs' Responses and Objections....................................................47

Document Request 20 ...........................................................................48

Plaintiffs' Responses and Objections....................................................48

Document Request 21 ...........................................................................48

Plaintiffs' Responses and Objections....................................................48

Document Request 22 ...........................................................................48

Plaintiffs' Responses and Objections....................................................48

iv

961695_1

Document Request 28 ...........................................................................49

Plaintiffs' Responses and Objections....................................................49

Document Request 29 ...........................................................................49

Plaintiffs' Responses and Objections....................................................49

Document Request 30 ...........................................................................50

Plaintiffs' Responses and Objections....................................................50

Document Request 31 ...........................................................................50

Plaintiffs' Responses and Objections....................................................51

Document Request 32 ...........................................................................51

Plaintiffs' Responses and Objections....................................................51

Document Request 34 ...........................................................................52

Plaintiffs' Responses and Objections....................................................52

Document Request 35 ...........................................................................52

Plaintiffs' Responses and Objections....................................................52

Document Request 36 ...........................................................................53

Plaintiffs' Responses and Objections....................................................53

Document Request 43 ...........................................................................54

Plaintiffs' Responses and Objections....................................................54

B.      Questcor's Argument .................................................................54

C.      Plaintiffs' Argument .................................................................56

v

**JOINT STIPULATION**

Defendant Questcor Pharmaceuticals, Inc. ("Questcor") and Plaintiffs Plumbers and Pipefitters National Pension Board, West Virginia Investment Management Board ("West Virginia"), and Steven Glucksberg (collectively, "Plaintiffs") respectfully submit this joint stipulation pursuant to Local Rule 37-2 regarding Plaintiffs' responses and objections to Questcor's First Set of Interrogatories ("Interrogatories") and First Request for Production of Documents ("Document Requests" or "Requests") served on Plaintiffs on March 6, 2014. Pursuant to Local Rule 37-1, on April 30, June 7, June 20, June 30, July 1, and July 3, 2014, the parties conferred in an attempt to resolve their disputes but, according to Questcor, were unable to do so with respect to Interrogatories 1 and 3, and Document Requests 1-22, 23-27, 28-30, 31-32, 34-36, and 43. (Declaration of Virginia Milstead ("Milstead Decl.") ¶¶ 2-14.)

## I.    **Questcor's Introductory Statement**

Defendants have produced over 60,000 documents totaling over 300,000 pages. On July 24, over *four months* after Questcor propounded discovery, Plaintiff West Virginia finally produced a mere 84 documents partially responsive to, at the most, three or four of Questcor's *44* document requests. ***Neither of the other two Plaintiffs has produced a single document.*** (Milstead Decl. ¶¶ 15-16.) In contrast to the stinginess of their own production, since the start of discovery Plaintiffs have continuously demanded document production from Questcor and dozens of third parties in hopes of finding a tenable claim for their securities fraud action. Plaintiffs have engaged in this one-way discovery campaign – which has already been limited by this Court and the District Court – while at the same time obfuscating the factual basis, or lack thereof, for their own action.[1] Specifically, in response to Questcor's

---

[1] Both this Court *and* the District Court have already curtailed Plaintiffs' aggressive campaign. On March 19, 2014 Questcor filed a motion for a protective order seeking to quash or limit the production of documents served on seven non-parties. On May 1, this Court granted Questcor's motion in large part, including quashing the subpoena on the Chronic Disease Fund ("CDF") in its entirety. Plaintiffs moved with the District Court to vacate the order quashing the CDF subpoena, arguing this Court erred in finding that discovery into CDF is irrelevant to Plaintiffs' claim that statements regarding Questcor's financial status and financial forecasts were false and misleading. The District Court denied

1

*(cont'd)*

March 2014 Interrogatories and Document Requests, Plaintiffs have:

- refused to identify persons who have provided information concerning the Complaint, (see Interrogatories 1 and 3), arguing that they have satisfied their discovery obligations by referring Questcor to the list of over 150 *potential* witnesses provided in Plaintiffs' initial disclosures, and asserting that the attorney work-product doctrine protects Plaintiffs from doing anything more.

- refused to produce documents concerning their investment history in Questcor securities after the putative Class Period, arguing that such information is irrelevant to their claims (see Document Requests 1-10).

- refused to produce documents in support of their own allegations and claims, hiding behind the attorney work-product doctrine as a safe haven from fulfilling basic discovery obligations (see Document Requests 23-27, 33).

- refused to articulate whether they have responsive documents to Requests they did not object to, or to even confirm they have conducted a diligent search for responsive documents as required by the Federal Rules of Civil Procedure (see Document Requests 2-22, 28-30, and 43), and have not yet produced documents they affirmatively agreed to produce (see Document Requests 31-32, 34-36).

Plaintiffs' objections are unfounded.  First, as to Interrogatories 1 and 3, courts reject the attorney work-product doctrine as protection against "interrogatories seeking the identity of witnesses or documents," Kolker v. VNUS Med. Techs. Inc., 2011 WL 5057094, at *6 (N.D. Cal. Oct. 24, 2011), and have held "it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material," such as pleadings and initial disclosures.  Equal Rights Center v. Post Prop. Inc., 246 F.R.D. 29, 35 (D.D.C. 2007).

Second, in federal securities class actions, courts have compelled the production of documents seeking a plaintiff's post-Class Period investment history, (see Document Requests 1-10), because such information may undercut a plaintiff's showing of reliance, and relatedly, render a plaintiff an inadequate class representative for class certification.  See, e.g., Feldman v. Motorola, Inc., 1992 WL 137163, at *2 (N.D. Ill. June 10, 1992); Rolex Empl.

_____
*(cont'd from previous page)*
Plaintiffs' motion and affirmed this Court's order, holding "it is clear the complaint's theory of misrepresentation based on artificial inflation of financial status is based on statements made in scientific studies, not financial support for co-pays or fraud relating to co-pays or affordability of Acthar for patients."  Thus, the District Court rejected Plaintiffs' attempt to use discovery to "'develop new claims'" "'not already identified in the pleadings.'" (7/21/2014 Order, at 1, 4-5, ECF No. 151) (quotation omitted).

1  Ret. Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 664 (D. Or. 1991) (plaintiffs' stock

2  purchases "after he learned of the alleged misrepresentations" "severs the link between the

3  alleged misrepresentations" and plaintiff's "stock purchases" and "rebuts the presumption

4  that [plaintiff] relied on the alleged misrepresentations in making his purchases").

5      Third, based on the principle "Defendants are entitled to know the factual basis of

6  Plaintiffs' claims in order to prepare for trial," courts routinely reject the attorney work-

7  product doctrine as a basis for refusing to produce documents that support the allegations in

8  a complaint.  Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc., 2005 WL

9  1459555, at *6 (N.D. Cal. June 21, 2005); In re Jet Network, LLC, 2012 WL 2998610, at *5

10  (S.D. Fla. July 23, 2012) (rejecting application of attorney work-product doctrine to request

11  for documents supporting claims, noting litigation "should not be a game of hide the ball").

12      Finally, the Federal Rules require responding parties to "make a timely, reasonable,

13  and diligent search for all documents responsive to the [propounding] party's discovery

14  requests."  Zander v. Craig Hosp., 2011 WL 834190, at *1 (D. Colo. Mar. 4, 2011).  If a

15  party fails to "demonstrate[e] that a diligent search and reasonable inquiry has been made in

16  an effort to locate the requested documents," courts have compelled the party to "either

17  produce the documents, or amend their response to state that a diligent search and reasonable

18  inquiry ha[s] been conducted, and to state the reason they are unable to comply…"

19  Waterbury v. Scribner, 2008 WL 2018432, at *6 (E.D. Cal. May 8, 2008).

20      Apparently understanding the legal baselessness of their positions, Plaintiffs have

21  stretched out the meet-and-confer process on Questcor's **March 6** discovery requests for

22  nearly three months since Questcor first initiated the meet-and-confer process in an April 21

23  letter.  (Milstead Decl. Ex. 1.)  During an April 30 meeting between the parties, counsel for

24  Plaintiffs stated that he would provide legal authority in support of Plaintiffs' objections at

25  issue in this Motion.  (Milstead Decl. ¶ 5.)  Counsel also stated that they would inquire as to

26  whether Plaintiffs had documents responsive to several of Questcor's Document Requests.

27  (Id. ¶ 6.)  Plaintiffs failed to promptly do so, despite three separate requests made by

28
                                            3

1    Questcor from May 16 to June 20.  (Id. Exs. 2-4.)  It was not until June 30 that Plaintiffs

2    purported to provide the legal authority they referenced in a meeting held *two months* earlier.

3    (Id. Ex. 5.)  However, despite another letter from Questcor on July 1, Plaintiffs have refused

4    to identify (i) to which Document Requests Plaintiffs intend to produce documents, or (ii) to

5    which Document Requests Plaintiffs have no responsive documents.  (See Id. Exs. 6 & 7.)

6           The Federal Rules "exhibit little patience for gamesmanship and attempts to withhold

7    discoverable materials and information," Lane v. Page, 2011 WL 1004825, at *4 (D.N.M.

8    Feb. 10, 2011), and the Court should not countenance Plaintiffs' one-way approach to

9    discovery.[2]  Questcor respectfully requests the Court compel:  (i) further responses to

10   Interrogatories 1 and 3; (ii) production of documents responsive to Requests 23-27, and 33;

11   (iii) production of documents responsive to Requests 1-10 without limiting it to documents

12   during the purported Class Period;  and (iv) production of documents responsive to Requests

13   2-22, 28-30, 31-32, 34-36, and 43, or a supplemental response stating a diligent search has

14   been conducted and the reasons Plaintiffs are unable to comply.  Questcor requests the Court

15   require all documents produced within two weeks of entry of order.[3]

16   **II.    Plaintiffs' Introductory Statement**

17          Questcor submits its Joint Stipulation Addressing Defendant's Motion to Compel

18   ("Motion") despite failing to confer in good faith as directed by Federal Rule of Civil

19   Procedure 37(a) and Local Rule 37.  On June 30, 2014, Plaintiffs provided Questcor with

20   authority it had requested supporting certain of Plaintiffs' objections to Questcor's

21   Interrogatories and Requests.  *See* Milstead Decl., Ex. 5.  Questcor responded on July 1, 2014

22

---

23   [2] "The party who resists discovery has the burden to show that discovery should not be
24   allowed, and has the burden of clarifying, explaining, and supporting its objections.'"
     DIRECTV v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  The Ninth Circuit has held this
25   is a "heavy burden."  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)
     Plaintiffs fail to carry their heavy burden for the reasons provided above and below.

26   [3] Given Plaintiffs' tardy and incomplete response to date, Questcor reserves the right to
27   move the Court to modify the scheduling order, including, but not limited to, extending the
     class certification motion deadlines.

28
                                              4

1  by demanding immediate production of documents in response to certain requests, requesting

2  "additional information" regarding many of Plaintiffs' objections over which Plaintiffs

3  believed the parties had reached accord, and threatening a motion to compel.  *Id.*, Ex. 6.  On

4  July 3, 2014, Plaintiffs clarified that it was their understanding that the parties had agreed

5  Plaintiffs would "produce relevant, non-privileged documents – to the extent they exist and/or

6  for the time period April 4, 2011 through September 21, 2012 – in response to a vast majority

7  of Questcor's individual requests."  *Id.*, Ex. 7.  Plaintiffs additionally indicated to Questcor that

8  they would soon initiate their production of these materials and sought confirmation that all

9  outstanding issues concerning Questcor's discovery had been addressed.[4]  *Id.*

10     Rather than respond to Plaintiffs' attempt at compromise or seek to engage in further

11  negotiation over the purported "disputes" set forth herein, Questcor unilaterally declared that

12  further discussion would be fruitless by prematurely seeking intervention by this Court.

13  Questcor's blatant disregard for Plaintiffs' effort to compromise and abrupt filing of this

14  Motion is inconsistent with its obligations to meet and confer and attempt to resolve these

15  issues in good faith.

16     Beyond being premature, Questcor's Motion seeks to compel the identification of

17  sources and the production of documents that are classic work product and thus afforded

18  qualified protection from disclosure.  It is well established that the work production doctrine

19  protects "trial preparation materials that reveal an attorney's strategy, evaluation and

20  investigation," including the "the identity of witnesses interviewed or otherwise relied upon by

21  plaintiffs."  *In re MTI Tech. Corp. Sec. Litig. II*, No. SACV 00-0745 DOC (ANx), 2002 U.S.

22  Dist. LEXIS 13015, at *7, *10 (C.D. Cal. June 14, 2002).  Because Questcor has not

23  demonstrated a substantial need or undue hardship in obtaining the material it seeks, the work

24  product doctrine should not be pierced.  *See* Fed. R. Civ. P. 26(b)(3).

25

26  [4]  Plaintiffs commenced their rolling production of responsive documents on July 24,

27  2014, four days prior to being served with this Motion.  *See* Ex. A attached to the Declaration of Erik W. Luedeke ("Luedeke Decl."), filed concurrently herewith.

28

1    Similarly, much of the material Questcor seeks through its Motion is wholly irrelevant

2    to any aspect of this litigation.  Under the Federal Rules of Civil Procedure, discovery is only

3    permitted so long as it is relevant, or reasonably calculated to lead to the discovery of

4    admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Even when relevant, discovery may not be

5    taken to annoy, embarrass or oppress a person, or cause him undue burden or expense.  Fed. R.

6    Civ. P. 26(c).  The Court has the discretion to "reasonably control discovery . . . to prevent

7    fruitless fishing expeditions with little promise of success."  *Blackie v. Barrack*, 524 F.2d 891,

8    906 n.22 (9th Cir. 1975).  The Court's exercise of such control is particularly appropriate with

9    respect to the overbroad, irrelevant and intrusive discovery that Questcor seeks here.

10    First, Questcor's Interrogatory Nos. 1 and 3, which are directed at lead counsel's pre-

11    filing investigation, seek to strip away the protections afforded litigants by the work product

12    doctrine by forcing Plaintiffs to reveal the sources of information on which certain of the

13    Complaint's allegations were based.  Who counsel interviewed and decided to rely on and the

14    importance placed on the various sources of information is classic work product for which

15    Questcor has not demonstrated a substantial need or faces an undue hardship in obtaining. By

16    providing Questcor with detailed and categorized Lead Plaintiffs' Initial Disclosures Pursuant

17    to Federal Rule of Civil Procedure 26(a)(1) ("Initial Disclosures") that include each fact

18    witness who provided information on which Plaintiffs relied in drafting the Complaint,

19    Plaintiffs have satisfied their discovery obligations.  *See* Luedeke Decl., Ex. B.

20    Second, Questcor's Request Nos. 1-10 regarding Plaintiffs' investment history in

21    Questcor securities seek irrelevant information and impose an undue burden on class members

22    seeking appointment as representative claimants.  "Courts have repeatedly rejected the

23    argument that a plaintiff's post-class period transactions in a defendant company's securities

24    are inconsistent with a claim of fraud or raise questions as to the plaintiff's adequacy and

25    typicality."  *McGuire v. Dendreon Corp.*, No. C07-800MJP, 2008 U.S. Dist. LEXIS 14713, at

26    *7 (W.D. Wash. Feb. 13, 2008).  In fact, purchases after full disclosure "may well make sound

27    economic sense in an efficient market because the market reflects news of any corrective

28

6

1  disclosures in the stock price, typically lowering the stock price." *In re Computer Sci. Corp.*

2  *Sec. Litig.*, 288 F.R.D. 112, 124 (E.D. Va. 2012).  Accordingly, the relevant time period for

3  Plaintiffs' transactions in Questcor securities is limited to the Class Period.

4          Third, as with Interrogatory Nos. 1 and 3, Questcor's Request Nos. 23-27 and 33 are

5  directed at Plaintiffs' counsel's legal analysis concerning their allegations in the Complaint,

6  counsel's opinion on Plaintiffs' merits on class certification, and/or call for expert opinion.  As

7  such, these materials are generally subject to work product protection.  Plaintiffs believe any

8  responsive materials not qualifying as work product are either already, or soon to be, within

9  Questcor's possession or easily attainable by Questcor.  *See Torres v. Goddard*, No. CV 06-

10  2482-PHX-SMM, 2010 U.S. Dist. LEXIS 87621, at *18 (D. Ariz. July 30, 2010); *Baldoni v.*

11  *UNUMProvident*, No. CV 03-1381-AS, 2007 U.S. Dist. LEXIS 14127, at *21-*23 (D. Or.

12  Feb. 26, 2007).

13          Despite the irrelevance of and protections afforded the materials sought by Questcor,

14  Plaintiffs have been very accommodating.  Indeed, Plaintiffs openly conferred with Questcor,

15  attempted to clarify their objections to Questcor's Interrogatories and Requests, and provided

16  Questcor with authority in support of their objections.  Moreover, Plaintiffs made several

17  attempts to reach a compromise with Questcor over its discovery.  Questcor's refusal to seek

18  an informal resolution prior to filing its Motion and its utter silence in response to Plaintiffs'

19  offers to compromise led to Questcor's lengthy Motion, not any unjustified objections,

20  unreasonableness, or feet-dragging by Plaintiffs.

21          In light of the substantial weight of authority supporting Plaintiffs' objections to each of

22  the Interrogatories and Requests identified by Questcor as disputed, Questcor's Motion should

23  be denied in its entirety.

24  **III.    Questcor's Motion to Compel Further Responses to Interrogatories**

25          **A.    Interrogatories at Issue and Responses**

26  **Interrogatory 1**

27  IDENTIFY ALL PERSONS with whom YOU, or YOUR counsel, have

28                                                7

COMMUNICATED CONCERNING the CAC or the allegations in the CAC.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates each of the foregoing General Objections as set forth herein.  Lead Plaintiff further objects to the Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or protection.  Moreover, Lead Plaintiff objects to this Interrogatory as it is compound.  Subject to and without waiving the foregoing objections, Lead Plaintiff responds as follows:

Lead Plaintiff has conferred with its counsel.  Lead Plaintiff refers to Defendant those individuals and entities identified in Lead Plaintiffs' Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), dated February 3, 2014.  Lead Counsel additionally has communicated with various third parties from which it has subpoenaed documents as identified on Lead Plaintiffs' Notice(s) of Request for Production of Documents to Non-Parties, dated February 19, 2014 and February 20, 2014.

**Interrogatory 3**

IDENTIFY ALL unidentified sources for allegations in the CAC, including, but not limited to, the sources of ALL allegations in paragraphs 41-43 and 46-49.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates each of the foregoing General Objections as set forth herein.  Plaintiff further objects to this Interrogatory as vague, overly broad, and unduly burdensome.  Moreover, Lead Plaintiff objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, and/or any other applicable privilege or protection.  Plaintiff additionally objects to this Interrogatory on the grounds that it seeks information that is publicly available or equally available to Defendant.

Subject to and without waiving the foregoing objections, Lead Plaintiff responds as follows:

8

1    Plaintiff refers Defendant to Lead Plaintiffs' Initial Disclosures pursuant to Federal

2    Rule of Civil Procedure 26(a)(1), dated February 3, 2014, which include the names and

3    contact information for potential witnesses known to Lead Plaintiff.  Additional

4    allegations were based upon information gathered from public sources, including an

5    article published by *TheStreetSweeper.org*, dated January 27, 2012 and entitled

6    "Questcor: The Secret behind Its 'Miracle' Drug," and sources cited therein.

7    **B.    Questcor's Argument**

8    Interrogatories 1 and 3 request Plaintiffs identify any persons or entities that

9    provided any information concerning the allegations in the Complaint or with whom

10   Plaintiffs communicated concerning the Complaint.  Plaintiffs have refused to do so,

11   instead arguing Questcor is not entitled to this information and that Plaintiffs have

12   satisfied their obligations under Federal Rule 33 by simply referring to the list of over

13   150 *potential* witnesses identified in Plaintiffs' initial disclosures.  Plaintiffs are wrong on

14   both fronts.

15   First, Plaintiffs incorrectly assert that the attorney work-product doctrine protects

16   them from disclosing the identity of witnesses they have spoken to and/or have provided

17   information to support the claims alleged in the Complaint.  Rather, "[c]ourts generally

18   approve of" "interrogatories seeking the identity of witnesses or documents" in support of

19   the responding party's claims, "whether early or late in a case," and thus have

20   consistently rejected the attorney work-product doctrine as a protection against

21   "identification interrogatories." Kolker, 2011 WL 5057094, at *6;[5] In re Harmonic, Inc.

22   Sec. Litig., 245 F.R.D. 424, 427-28 (N.D. Cal. 2007) ("The issue here … is not *if* the

23   [witnesses'] identities will ever be discovered, but rather *when* they will be discovered,"

24   and thus "the only effect"  of withholding identities "is to force the Defendants to expend

25   resources on taking the depositions of 77 people [identified in plaintiffs' initial

26   ─────────────────

27   [5] All emphasis and alterations are added and internal citations and quotations omitted unless indicated.

28                                    9

disclosures] in order to obtain the information.  Because the information will inevitably be disclosed and the earlier disclosure does not compromise [p]laintiffs' strategic or tactical position, there is no basis for finding work product protection.") (emphasis in original); In re Convergent, 108 F.R.D. at 340-41 ("There is no reason plaintiffs should not identify … any witnesses whom plaintiffs know have information that supports or contradicts any of the controverted allegations in plaintiffs Consolidated Amended Complaint. The court hereby orders plaintiffs to identify such persons for defendants within thirty days of the date this order is filed."); McNamara v. Erschen, 8 F.R.D. 427, 429 (D. Del. 1948) (distinguishing between an interrogatory "seeking only the identity of persons known to the plaintiff in connection with those allegations of the complaint" and "the subsequent mental determination of what precise witnesses are best available to prove a relevant fact …," especially when such identity is requested at an early stage of the litigation).[6]

In Kolker, the defendant propounded fifteen interrogatories that sought the identification of "all witnesses and documents that support" specific allegations made by plaintiff.  Kolker, 2011 WL 5057094, at *5.  Plaintiffs contended that the attorney work-product doctrine protected the requested disclosure.  The Kolker court explicitly rejected this argument, holding that plaintiff "cannot claim a privilege over the identity or description of witnesses or documents that may be used to support [his] allegations."  Id. at *6.  Noting that defendant "has not requested a summary or even identification of 'interviews, statements, memoranda, correspondence, briefs, mental impressions," the court held that seeking the identity of witnesses "do[es] not go so far as to require disclosure of counsel's work-product."  Id.  Here, Plaintiffs' unsupported assertion of the

---

[6] The permissibility of identification interrogatories are borne from the notion that "[m]utual knowledge of the relevant facts is essential to proper litigation.  Either party may compel the other to disclose what relevant facts he has in his possession."  Sargent-Welch Scientific Co. v. Ventron Corp., 59 F.R.D. 500, 503 (N.D. Ill. 1973).

1  attorney work-product is unavailing and does not relieve them of their duties to provide

2  the information sought in Interrogatories 1 and 3.

3      Second, Plaintiffs contend they have satisfied their obligations by merely referring

4  to their initial disclosures which, pursuant to Federal Rule 26 governing initial

5  disclosures, listed over 150 individuals "*likely* to have discoverable information."  Fed. R.

6  Civ. Proc. 26(a)(1)(A)(i).  Not so.  Under Federal Rule 33(b)(1), governing responses to

7  interrogatories,  "[i]t is technically improper and unresponsive for an answer to an

8  interrogatory to refer to outside material," such as pleadings and initial disclosures.

9  Equal Rights Center, 246 F.R.D. at 35; DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677,

10  680-81 (D. Kan. 2004) (plaintiff's answer to interrogatory referring to complaint and

11  initial disclosures insufficient, holding a "Plaintiff may not merely refer Defendants to

12  other pleadings or its disclosures hoping that Defendants will be able to glean the

13  requested information from them"); Davis v. City of Springfield, Ill., 2009 WL 268893,

14  at *5 (C.D. Ill. Jan. 30, 2009) (party "erred in referring to [its initial disclosures]

15  generally in its response to" interrogatories).  Thus, courts have held that a responding

16  party's reference to potential witnesses identified in the responding party's initial

17  disclosures is an insufficient response to an interrogatory that seeks the identity of

18  individuals or entities that the responding party did in fact communicate with or whom

19  form the basis of specific allegations or claims made by the responding party.  See

20  Kolker, 2011 WL 5057094, at *5; see also Smith v. Cafe Asia, 256 F.R.D. 247, 253

21  (D.D.C. 2009) (referring to initial disclosure list that "may have discoverable

22  information," insufficient response to interrogatory seeking identity and description of all

23  party's communications "related to any allegation in Plaintiff's Complaint or Defendant's

24  Answer").

25      In Smith, plaintiff propounded an interrogatory requesting defendant to identify

26  and describe any communication it had "related to any allegation in [p]laintiff's

27  complaint or [d]efendant's answer."  Smith, 256 F.R.D. at 253.  Defendants responded to

28  

11

1  the interrogatory by simply referring to its initial disclosures, and plaintiff moved to

2  compel further response.  The court granted the motion, noting that Federal Rule Civil

3  Procedure 26(a)(1)(A) requires initial disclosures to include information on "each

4  individual likely to have discoverable information, not on each person who had a

5  communication that was related to any allegation in [p]laintiff's complaint or

6  [d]efendant's answer."  Id.  The court held that plaintiff's interrogatory "does not ask for

7  the identical list of persons that are included in defendant's initial disclosures. … Thus,

8  referring to the initial disclosure list of persons may be overbroad and, therefore,

9  defendant must specifically indicate the persons who had a communication regarding any

10  allegations."  Id.[7]

11   Just as in Smith, Interrogatories 1 and 3 do not ask Plaintiffs to list all individuals

12  or entities that may become witnesses in this case, as Plaintiffs were required to identify

13  in their initial disclosures.  Instead, the Interrogatories request Plaintiffs to identify (i) all

14  persons Plaintiffs have in fact communicated with concerning any allegation in the

15  Complaint and (ii) the sources that support Plaintiffs' specific allegations in paragraphs

16  41-43 and 46-49.  Thus, just as in Smith, Plaintiffs' simple reference to "the initial

17  disclosure list of persons may be overbroad" and inadequate.  Smith, 256 F.R.D. at 253.

18  The Court should compel Plaintiffs to "specifically indicate the persons who [Plaintiffs]

19  had a communication regarding any allegations," and/or provided information in support

20  of those allegations.  Id.

21   **C.** **Plaintiffs' Argument**

22   The identities of the witnesses Plaintiffs' counsel interviewed and decided to rely

23  on and the importance placed on the various sources of information are classic work

24

25  [7] See also Kolker, 2011 WL 5057094, at *6 (distinguishing initial disclosures from an interrogatory seeking identity of witnesses that support specific party claims, finding "the

26  federal rules require parties in their initial disclosures to provide the identity of individuals, as well as copies or descriptions of documents, that they may use to support [their] claims or

27  defenses.  The rules do not require parties to specify which individuals or documents may be used for specific or particularized elements or aspect of their claims.")

28

product.  *See MTI II*, 2002 U.S. Dist. LEXIS 13015, at *7-*10.  In their Initial Disclosures, Plaintiffs identified all of the fact witnesses, including those relied upon in the Complaint, from whom Plaintiffs may elicit testimony as this case moves forward.[8] Nonetheless, Questcor seeks to compel Plaintiffs to reveal their investigatory efforts over the last two years by requiring that Plaintiffs identify each witness Plaintiffs relied upon in the Complaint.

The Supreme Court's seminal decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), explains the rationale behind the work product doctrine:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, . . . mental impressions, personal beliefs, and countless other tangible and intangible ways . . . .

*Id.* at 510-11; *see also Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989).  Furthermore, in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), the Supreme Court proclaimed that "'[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.'"  *Id.* at 396 (citation omitted).  Thus, while the identity of

---

[8]  Pursuant to the Scheduling and Case Management Order Re Jury Trial, the Initial Expert Disclosure & Report Deadline is not until January 13, 2015.  Milstead Decl., Ex. 8.

persons with knowledge has often been requested in discovery and found to be within the scope of discoverable information, the identities of witnesses contacted by opposing counsel have consistently been protected. *See In re Gupta Corp. Sec. Litig.*, No. C-94-1517 FMS, 1995 U.S. Dist. LEXIS 21847, at *3-*5 (N.D. Cal. July 18, 1995) (clarifying his rationale in *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985), a matter he decided ten years earlier and on which Questcor relies here, Magistrate Judge Brazil sanctioned defendants for bringing a motion seeking to compel interrogatory responses because the "interrogatories do not ask for the identity of persons with knowledge; they ask for the identity of each person contacted by plaintiffs' counsel"). Part of the rationale behind this distinction is that if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy.

Courts in the Ninth Circuit have routinely rejected attempts to obtain discovery similar to that sought by Questcor through Interrogatory Nos. 1 and 3. *See, e.g., MTI II*, 2002 U.S. Dist. LEXIS 13015, at *10 ("This Court finds that the identity of the former employees mentioned in the [complaint] includes work product content. This finding is made in light of the established law concluding that there is work product in the identity of witnesses interviewed or otherwise relied upon by plaintiffs."); *Local 703 v. Regions Fin. Corp.*, No. 12cv1561 H (NLS), 2012 U.S. Dist. LEXIS 130002, at *9-*10 (S.D. Cal. Sept. 11, 2012) (collecting cases) ("[e]ven if Defendants ultimately only seek the names and contact information of the witnesses contacted, that information is protected as work product"); *In re Ashworth Sec. Litig.*, 213 F.R.D. 385, 386-90 (S.D. Cal. 2002) (denying motion to compel confidential witness ("CW") identities because such information "'would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with plaintiff's counsel's legal theories and conclusions as outlined in the complaint'") (citation omitted); *Gen-Probe Inc. v. Becton*, No. 09cv2319

14

1  BEN (NLS), 2011 U.S. Dist. LEXIS 27961, at *6-*7 (S.D. Cal. Mar. 18, 2011)

2  (following *Ashworth* and *MTI II*).[9]

3       The only applicable Ninth Circuit district court authority relied upon by Questcor

4  prior to the filing of its Motion is easily distinguished and, in fact, accepts that "[t]here is

5  no binding precedent as to whether disclosure of the mere identity of a CW at this

6  juncture is protected work product. Neither the Supreme Court nor the Ninth Circuit has

7  opined on the matter.  As to those courts that have addressed the issue, some have held

8  that the identities are privileged; other courts have held they are not."  *In re Harmonic,*

9  *Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007); *see also In re Connetics Corp. Sec.*

10 *Litig.*, No. C 07-02940 SI, 2009 U.S. Dist. LEXIS 129508, at *4-*5 (N.D. Cal. Apr. 27,

11 2009) (same); Milstead Decl., Ex. 1 at 3 (citing *Harmonic*, 245 F.R.D. 424 and *Connetics*,

12 2009 U.S. Dist. LEXIS 129508).

13      Importantly, the *Harmonic* and *Connetics* courts noted that their decisions

14 compelling identification of confidential witnesses turned on, among other things, the

15 fact that plaintiffs "reveal[ed] which witness statements they evaluated as being

16 important by attributing statements to particular witnesses in the [complaint]."  *Connetics*,

17 2009 U.S. Dist. LEXIS 129508, at *7; *Harmonic*, 245 F.R.D. at 428 ("Plaintiffs have

18 already revealed their legal strategy by including the CWs' statements in the [complaint]"

19 and "provided substantial indicators as to who the CWs are").  In the Complaint,

20 Plaintiffs here do not quote or otherwise attribute statements by particular witnesses or

21 identify CWs.  Instead, Plaintiffs' counsel generally relied on information obtained

22

23 ────────────────
   [9]   *See also, e.g.*, *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc*., No. 10-
24 2558-KHV-DJW, 2012 U.S. Dist. LEXIS 113223, at *21 (D. Kan. Aug. 13, 2012);  *In re
   SLM Corp. Sec. Litig*., No. 08 Civ. 1029 (WHP), 2011 U.S. Dist. LEXIS 16893, at *1-*2
25 (S.D.N.Y. Feb. 15, 2011); *In re Veeco Instruments, Inc. Sec. Litig*., No. 05 MD 1695
   (CM) (GAY), 2007 U.S. Dist. LEXIS 5969, at *3-*4 (S.D.N.Y. Jan. 26, 2007) (same); *In
26 re St. Paul Travelers Sec. Litig. II*, No. 04-4697 (JRT/FLN), 2007 U.S. Dist. LEXIS
   34527, at *5-*7 (D. Minn. May 10, 2007); *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02
27 CV 225, 2003 U.S. Dist. LEXIS 11818, at *3 (E.D. Tex. July 9, 2003); *Massachusetts v.
   First Nat'l Supermarkets, Inc*., 112 F.R.D. 149, 150 (D. Mass. 1986).

28                                        15

1  during their investigation prior to drafting the Complaint.[10]

2  　　　The protection over the disclosure of witnesses that is afforded Plaintiffs by the

3  work product doctrine can only be breached by Questcor upon a showing that it has a

4  "substantial need of the materials" and "cannot, without undue hardship, obtain their

5  substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Questcor has

6  made no such showing.

7  　　　Indeed, the only burden Questcor raises is having to conduct its own investigation

8  of the allegations in the Complaint.  However, Questcor is in the best position to know

9  what type of information each witness possesses.  *See MTI II*, 2002 U.S. Dist. LEXIS

10  13015, at *13 (recognizing no hardship exists where witnesses identified in Rule 26

11  disclosures consisted primarily of defendant's current and former employees, because

12  defendants "are in the best position to know what type of information each individual

13  may possess"); *Ashworth*, 213 F.R.D. at 389 (same).  Consistent with Rule 26, Plaintiffs

14  served Questcor with their Initial Disclosures identifying persons likely to have

15  discoverable information that Plaintiffs may use to support their claims.  *See* Luedeke

16  Decl., Ex. B.  Plaintiffs' thorough Initial Disclosures consist of 163 individuals and

17  entities, largely as a result of Plaintiffs' counsel's diligent investigation and ongoing

18  development of this case.[11]  *Id.*  For convenience sake, however, Plaintiffs took the

19  

---

20  [10]  Notably, the *Harmonic* court made clear that a "broad request" analogous to
21  Interrogatory No. 1 seeking "a list of 'all persons that [were] interviewed during the
　   course of the investigation'. . . would undoubtedly provide insight into counsel's thought
22  processes during preparation for litigation" and intrude upon work product.  245 F.R.D.
　   at 428 (citation omitted).

23  [11]  Questcor points to no binding Ninth Circuit precedent to support its position that it is
24  improper to point to extrinsic documents such as initial disclosures in interrogatory
　   responses.  Persuasive authority on the issue appears to be unsettled.  *See, e.g., Wheeler v.*
25  *Blackbear Two, LLC*, No. 6:12-cv-583-ORL-37TBS, 2012 U.S. Dist. LEXIS 170374, at
　   *5-*6 (M.D. Fla. Nov. 30, 2012); *SLM*, 2011 U.S. Dist. LEXIS 16893, at *1-*3;
26  *Stoltenberg v. Unum Life Ins. Co. of Am.*, No. 8:04CV288, 2005 U.S. Dist. LEXIS 48393,
　   at *12-*13 (D. Neb. Dec. 12, 2005).  Questcor also provides no compelling reason why
27  pointing to extrinsic documents that it has access to should be deemed an insufficient
　   response.

28  　　　　　　　　　　　　　　16

1  liberty of dividing the list into seven subgroupings based on the affiliation of the

2  individual or entity listed.  *Id*.  The largest subgroup – consisting of 111 names – consists

3  of current or former Questcor employees, contractors and associated physicians.[12]  As

4  Questcor is aware or should be able to quickly determine, any witness that it has

5  requested that Plaintiffs identify is almost certainly to be contained within this

6  subgroup.[13]  Accordingly, Questcor faces no undue hardship.  *See MTI II*, 2002 U.S. Dist.

7  LEXIS 13015, at *13 (rejecting the reasoning in *In re Aetna Inc. Sec. Litig.*, No. MDL

8  1219, 1999 U.S. Dist. LEXIS 8038 (E.D. Pa. June 1, 1999) (*see* Milstead Decl., Ex. 1 at

9  3), and finding that although the list of 750 individual names provided by the Aetna

10 plaintiffs may have been "unmanageable," a list of 71 individuals would not cause

11 defendants undue hardship); *Ashworth*, 213 F.R.D. at 390 (100 potential witnesses will

12 not cause defendant undue hardship); *SLM*, 2011 U.S. Dist. LEXIS 16893, at *1-*2 (no

13 undue hardship "in conducting an investigation of the 73 former employees listed in

14 Plaintiffs' initial disclosures").  Questcor should be required to do its own work and

15 interview persons from this subgroup – many of which are also contained within

16 Questcor's initial disclosures – as they see fit, rather than cutting corners by asking

17 Plaintiffs to reveal who they believe to be the best witnesses.  *See Sporck v. Peil*, 759

18 F.2d 312, 316 (3d Cir. 1985) (noting that it is in the best interest of the adversary system

19 "that each side relies on its own wit in preparing their respective cases").

20       Accordingly, the Court should deny Questcor's Motion with respect to

21 Interrogatory Nos. 1 and 3.

22 ──────────────

23 [12]  The other subgroups principally consist of the names of plaintiffs, defendants, auditors and advisors, analysts and media, government agencies, and other witnesses (primarily
24 healthcare providers and several non-Questcor-affiliated doctors).  Luedeke Decl., Ex. B.

25 [13]  The allegations contained in Complaint paragraphs 41-43 and 46-49, the sources of which Questcor requests Plaintiffs identify through Interrogatory No. 3, relate primarily
26 to general Company practices, including Questcor's use of paid consultants to promote Acthar and the composition and frequency of Company meetings.  From this list,
27 Questcor, in a much better position than Plaintiffs to know what type of knowledge these individuals possess, can glean the sources of the information it seeks with limited effort.

28                                                17

**IV.** **Questcor's Motion to Compel Production of Documents**

    **A.** **Requests for Production 1-10**

        **1.** **Requests and Responses at Issue**

**Document Request 1**

ALL DOCUMENTS CONCERNING YOUR current ownership of QUESTCOR SECURITIES.

    **Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it calls for the production of documents not within Lead Plaintiff's possession, custody or control, documents that can be found in the public domain or documents that can be found in the pleadings or factual record in this action.  In addition, Lead Plaintiff objects to this Request on privacy grounds to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity.  Lead Plaintiff further objects to this Request to the extent it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

    **Document Request 2**

ALL DOCUMENTS CONCERNING YOUR history of ownership of QUESTCOR SECURITIES.

    **Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it calls for the production of documents not within Lead Plaintiff's possession, custody or control, documents that can be found in the public domain or documents that can be found in the pleadings or factual record in this action.  Lead Plaintiff also objects to this Request to the extent no relevant time period is indicated as it extends the scope of

18

1  discovery to include information that is neither relevant nor likely to lead to the discovery

2  of admissible evidence.  In addition, Lead Plaintiff objects to this Request on privacy

3  grounds to the extent that it seeks or require disclosure of information which is protected

4  from disclosure by the attorney-client privilege, the attorney work-product doctrine,

5  and/or any other applicable privilege or immunity.

6       Subject to and without waiving the foregoing objections, for the time period April

7  4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

8  non-privileged documents to the extent such documents exist and are in its possession,

9  custody or control.

10      **Document Request 3**

11      ALL DOCUMENTS CONCERNING YOUR reasons for acquiring QUESTCOR

12 SECURITIES.

13      **Plaintiffs' Responses and Objections**

14      Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

15 Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

16 broad in its use of "reasons" and "acquiring."  Lead Plaintiff further objects to this

17 Request to the extent it calls for the production of documents not within Lead Plaintiff's

18 possession, custody or control.  Lead Plaintiff also objects to this Request to the extent no

19 relevant time period is indicated as it extends the scope of discovery to include

20 information that is neither relevant nor likely to lead to the discovery of admissible

21 evidence.  In addition, Lead Plaintiff objects to this Request on privacy grounds to the

22 extent that it seeks or require disclosure of information which is protected from

23 disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any

24 other applicable privilege or immunity.

25      Subject to and without waiving the foregoing objections, for the time period April

26 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

27 non-privileged documents to the extent such documents exist and are in its possession,

28

19

1 custody or control.

2 **Document Request 4**

3     ALL DOCUMENTS CONCERNING any and all TRANSACTIONS executed by

4 YOU involving QUESTCOR SECURITIES.

5     **Plaintiffs' Responses and Objections**

6     Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

7 Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it

8 calls for the production of documents not within Lead Plaintiff's possession, custody or

9 control, documents that can be found in the public domain or documents that can be

10 found in the pleadings or factual record in this action. Lead Plaintiff also objects to this

11 Request to the extent no relevant time period is indicated as it extends the scope of

12 discovery to include information that is neither relevant nor likely to lead to the discovery

13 of admissible evidence. In addition, Lead Plaintiff objects to this Request on privacy

14 grounds to the extent that it seeks or require disclosure of information which is protected

15 from disclosure by the attorney-client privilege, the attorney work-product doctrine,

16 and/or any other applicable privilege or immunity.

17     Subject to and without waiving the foregoing objections, for the time period April

18 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

19 non-privileged documents to the extent such documents exist and are in its possession,

20 custody or control.

21     **Document Request 5**

22     ALL DOCUMENTS or COMMUNICATIONS CONCERNING YOUR decision

23 to purchase or sell QUESTCOR SECURITIES, including, but not limited to, ALL

24 DOCUMENTS or COMMUNICATIONS CONCERNING any rationale or investment

25 philosophy underlying YOUR decision to purchase or sell any QUESTCOR

26 SECURITIES.

27     **Plaintiffs' Responses and Objections**

28

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly broad in its use of "rationale" and "investment philosophy."  Further, Lead Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it is duplicative of other requests and/or calls for the production of documents not within Lead Plaintiff's possession, custody or control.  Lead Plaintiff further objects to this Request as it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Lead Plaintiff objects to this Request on privacy grounds to the extent that it seeks or require disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, for the time period April 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

### Document Request 6

ALL DOCUMENTS, COMMUNICATIONS or any other information on which YOU relied, in whole or in part, in making a decision with respect to any actual or contemplated investment in QUESTCOR SECURITIES, whether on YOUR own behalf or on behalf of another person.

### Plaintiffs' Responses and Objections

Lead Plaintiff incorporates herein each of the foregoing General Objections. Further, Lead Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it is duplicative of other requests and/or calls for the production of documents not within Lead Plaintiff's possession, custody or control.  Lead Plaintiff also objects to this Request to the extent no relevant time period is indicated as it extends the scope of discovery to include information that is neither relevant nor likely to lead to the discovery

21

961695_1

1 of admissible evidence.  In addition, Lead Plaintiff objects to this Request on privacy
2 grounds to the extent that it seeks or require disclosure of information which is protected
3 from disclosure by the attorney-client privilege, the attorney work-product doctrine,
4 and/or any other applicable privilege or immunity.

5       Subject to and without waiving the foregoing objections, for the time period April
6 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,
7 non-privileged documents to the extent such documents exist and are in its possession,
8 custody or control.

9 **Document Request 7**
10       ALL DOCUMENTS, COMMUNICATIONS the due diligence, if any, YOU or
11 any person or entity acting on YOUR behalf or for YOUR benefit performed prior to
12 investing in QUESTCOR SECURITIES.

13 **Plaintiffs' Responses and Objections**

14       Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead
15 Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly
16 broad in its use of "due diligence," "benefit" and "performed."  Further, Lead Plaintiff
17 objects to this Request as unduly burdensome and overly broad to the extent it calls for
18 the production of documents not within Lead Plaintiff's possession, custody or control.
19 Lead Plaintiff also objects to this Request to the extent no relevant time period is
20 indicated as it extends the scope of discovery to include information that is neither
21 relevant nor likely to lead to the discovery of admissible evidence.  In addition, Lead
22 Plaintiff objects to this Request on privacy grounds to the extent that it seeks or require
23 disclosure of information which is protected from disclosure by the attorney-client
24 privilege, the attorney work-product doctrine, and/or any other applicable privilege or
25 immunity.

26       Subject to and without waiving the foregoing objections, for the time period April
27 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,
28

22

1  non-privileged documents to the extent such documents exist and are in its possession,

2  custody or control.

3      **Document Request 8**

4      ALL DOCUMENTS and COMMUNICATIONS sufficient to identify YOUR use

5  of the services of an investment advisor, stock broker, or money manager.

6      **Plaintiffs' Responses and Objections**

7      Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

8  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

9  broad in its use of "identify," "use of" and "services of," and/or as it seeks any

10  communication between Lead Plaintiff and any person.  Lead Plaintiff further objects to

11  this Request as it seeks irrelevant information and is not reasonably calculated to lead to

12  the discovery of admissible evidence.  Lead Plaintiff also objects to this Request to the

13  extent no relevant time period is indicated as it extends the scope of discovery to include

14  information that is neither relevant nor likely to lead to the discovery of admissible

15  evidence.  In addition, Lead Plaintiff objects to this Request on privacy grounds to the

16  extent that it seeks or require disclosure of information which is protected from

17  disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any

18  other applicable privilege or immunity.

19      Subject to and without waiving the foregoing objections, for the time period April

20  4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

21  non-privileged documents to the extent such documents exist and are in its possession,

22  custody or control.

23      **Document Request 9**

24      DOCUMENTS sufficient to identify any and ALL brokerage or advisory accounts

25  in which YOU hold investments.

26      **Plaintiffs' Responses and Objections**

27      Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

28

23

1  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

2  broad in its use of "identify" without any reasonable limitation in scope and/or to the

3  extent it is duplicative of other requests and/or calls for the production of documents not

4  within Lead Plaintiff's possession, custody or control.  Lead Plaintiff further objects to

5  this Request as it seeks irrelevant information and is not reasonably calculated to lead to

6  the discovery of admissible evidence.  Lead Plaintiff also objects to this Request to the

7  extent no relevant time period is indicated as it extends the scope of discovery to include

8  information that is neither relevant nor likely to lead to the discovery of admissible

9  evidence.  In addition, Lead Plaintiff objects to this Request on privacy grounds to the

10 extent that it seeks or require disclosure of information which is protected from

11 disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any

12 other applicable privilege or immunity.

13       Subject to and without waiving the foregoing objections, for the time period April

14 4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

15 non-privileged documents to the extent such documents exist and are in its possession,

16 custody or control.

17       **Document Request 10**

18       ALL DOCUMENTS CONCERNING the performance of YOUR investment in

19 QUESTCOR SECURITIES.

20       **Plaintiffs' Responses and Objections**

21       Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

22 Plaintiff objects to this Request to the extent it is irrelevant and not reasonably calculated

23 to lead to the discovery of admissible evidence.  Lead Plaintiff further objects to this

24 Request as unduly burdensome to the extent it seeks documents that are in the public

25 domain.  Lead Plaintiff also objects to this Request to the extent no relevant time period

26 is indicated as it extends the scope of discovery to include information that is neither

27 relevant nor likely to lead to the discovery of admissible evidence.  In addition, Lead

28

24

1  Plaintiff objects to this Request on privacy grounds to the extent that it seeks or require

2  disclosure of information which is protected from disclosure by the attorney-client

3  privilege, the attorney work-product doctrine, and/or any other applicable privilege or

4  immunity.

5       Subject to and without waiving the foregoing objections, for the time period April

6  4, 2011 through September 21, 2012, Lead Plaintiff will produce responsive, relevant,

7  non-privileged documents to the extent such documents exist and are in its possession,

8  custody or control.

9                   2.       **Questcor's Argument**

10       Document Requests 1-10 seek various documents concerning Plaintiffs'

11  investment history in Questcor securities, including but not limited to, Plaintiffs' current

12  ownership of Questcor securities, history of ownership of Questcor securities, Plaintiffs'

13  reasons or rationale for acquiring or selling Questcor securities, and the information

14  Plaintiffs or their investment advisors relied upon when making transactions involving

15  Questcor securities.  Plaintiffs seek to limit the temporal scope of Requests 2-10 to the

16  putative Class Period and refuse to produce any documents responsive to Request 1,

17  asserting that Plaintiffs' post-Class Period investment history in Questcor securities is

18  irrelevant to the merits of the case or issues of class certification.   It has now been *four*

19  *months* since Questcor propounded discovery and Questcor must begin preparing its

20  opposition to class certification on August 4, 2014, without a substantial production of

21  documents from Plaintiffs.[14]  The Court should compel production of documents in

22  response to these requests in their entirety within two weeks of the entry of the order

23  _____

24  [14] Indeed, for the period of time for which Plaintiffs have no objection whatsoever, only

25  one of the three Lead Plaintiffs has produced a handful of documents partially responsive to these requests.  Plaintiff West Virginia Investment Management Board produced 84

26  documents from its financial advisor, largely consisting of periodic reviews of the stock markets as a whole and West Virginia Management Board's overall investment portfolio.

27  Questcor believes such documents may be partially responsive to Document Requests 2, 7, 8, and 9 at best.  (Milstead Decl. ¶ 15.)

28                                      25

1   compelling production.

2        Under Federal Rule of Civil Procedure 26(b)(1), "[r]elevancy is broadly construed,

3   and a request for discovery should be considered relevant if there is any possibility that

4   the information sought may be relevant to the claim or defense of any party.  A request

5   for discovery should be allowed unless it is clear that the information sought can have no

6   possible bearing on the claim or defense of a party."  In re Toys "R" Us-Delaware, Inc.

7   Fair & Accurate Credit Transactions Act (FACTA) Litig., 2010 WL 4942645, at *1 (C.D.

8   Cal. July 29, 2010).  The burden is on Plaintiffs to demonstrate lack of relevance.  See

9   First United Methodist Church v. Atl. Mut. Ins. Co., 1995 WL 566026, at *2 (N.D. Cal.

10  Sept. 19, 1995) ("Under the liberal Federal rules the party attempting to avoid discovery

11  needs to carry a heavy burden demonstrating why discovery should be denied.").

12       In purported federal securities class actions, courts have compelled the production

13  of documents concerning the lead plaintiff's pre- and post-class period investment history,

14  finding that such documents are relevant to class certification issues and the underlying

15  merits of a securities action.  See Feldman, 1992 WL 137163, at *2 (compelling

16  production of Plaintiffs' pre- and post-Class Period investment history).  In re ML-Lee

17  Acquisition Fund II, L.P., 149 F.R.D. 506, 508 (D. Del. 1993) (compelling production of

18  documents "concerning Plaintiffs' investment history since [22 months before class

19  period]" as "relevant to the Court's determination of whether Plaintiffs satisfy the

20  typicality requirement"); In re SciMed Life Sec. Litig., 1992 WL 413867, at *2 (D. Minn.

21  Nov. 20, 1992) (compelling documents concerning "*complete* information concerning

22  each named Plaintiffs' purchases and sales of SciMed Securities.  It seeks information

23  and documents which are relevant to class certification and the merits of the case"); In re

24  Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 111, 114 (compelling

25  production of pre- and post-class period investment history as relevant to typicality).

26  Specifically, case law demonstrates that Plaintiffs' post-Class Period investment history

27  in Questcor securities may undercut Plaintiffs' showing of reliance, and relatedly, render

28                                           26

1  Plaintiff an inadequate class representative for the purposes of class certification.

2          In securities cases where plaintiffs rely on the fraud-on-the-market theory to

3  establish reliance, as Lead Plaintiffs do here (see CAC ¶¶ 120-126, ECF No. 83), courts

4  have held that a plaintiff's post-Class Period investment history may "sever[]" the link

5  "between the alleged misrepresentations of the defendant and the price paid by a plaintiff

6  or his decision to trade at a fair market price" and therefore may "rebut" the fraud-on-the-

7  market presumption of reliance.  Rolex Emps. Ret. Trust, 136 F.R.D. at 664 ("The fact

8  that [plaintiff] continued to trade in [defendant's] stock" "after he learned of the alleged

9  misrepresentations of defendants severs the link between the alleged misrepresentations

10 of defendants and the stock purchases made by Schmidt and acts to rebut the presumption

11 that Schmidt relied on the alleged misrepresentations in making his purchases"); In re

12 Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003) ("Defendants have shown

13 that Lead Plaintiff Adal increased his holdings in Safeguard stock even after public

14 disclosure of the alleged fraud. Lead Plaintiff Adal would have made – and in fact did –

15 purchase stock regardless of the fraudulent omission. . . . Defendants have presented

16 compelling reason to rebut the reliance presumption."); In re World Access, Inc. Sec.

17 Litig., 310 F. Supp. 2d 1281, 1300 (N.D. Ga. 2004) (presumption severed by evidence

18 showing plaintiff "continued to purchase WAXS stock after he learned of the alleged

19 misrepresentations in early 1999").

20         Likewise, courts have held that evidence showing a lead plaintiff did not rely on

21 the alleged misstatements or on the integrity market, such as its post-Class Period

22 investment history, renders the lead plaintiff "subject to unique defenses" making "class

23 certification … inappropriate," because the lead plaintiff cannot satisfy Federal Rule

24 23(a)'s typicality requirement.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508-09 (9th

25 Cir. 1992); In re Connetics Corp. Sec. Litig., 257 F.R.D. 572, 577 (N.D. Cal. 2009)

26 (collecting cases where "district courts have concluded that post-adverse discloser

27 purchasers cannot be certified as class representatives"); In re Valence Tech. Sec. Litig.,

28

27

1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (plaintiffs' post-class period purchases renders their "positions … far removed from those of the pre-May 1994 purchasers and thus these plaintiffs are not typical of the class"); In re Cardinal Health, Inc. Sec. Litig., 226 F.R.D. 298, 310 (S.D. Oh. 2005) (finding that where the plaintiff "began buying Cardinal [stock] at almost exactly the same time that Cardinal Health began to disclose publicly the ongoing investigations," the plaintiff's "trading patterns will make it susceptible to claims that [it] did not rely on the Defendants' alleged misrepresentations when purchasing Cardinal stock"); In re World Access, 310 F. Supp. 2d at 1300 (class certification denied where plaintiffs post-class period actions "directly counter the premise upon which the fraud-on-the-market theory is based").

Here, the documents requested by Document Requests 1-10 may reveal that Plaintiffs' post-Class Period investment history demonstrates, directly or indirectly, that Plaintiffs did not rely on the alleged misrepresentations or the integrity of the market when purchasing Questcor securities during the Class Period.  For example, documents may show that (i) Plaintiffs' trading activity and the price of those trades did not change during and after the Class Period, see Ballan v. Upjohn Co., 159 F.R.D. 473, 481 (W.D. Mich. 1994) (finding the plaintiff atypical where he purchased shares *at the same price* both during and shortly after the class period); (ii) the timing of Plaintiffs' trading activity around the end of the Class Period render Plaintiffs susceptible to typicality attacks, Cardinal Health, 226 F.R.D. at 310 (finding that where the plaintiff "began buying Cardinal [stock] at almost exactly the same time that Cardinal Health began to disclose publicly the ongoing investigations," the plaintiff's "trading patterns will make it susceptible to claims that [it] did not rely on the Defendants' alleged misrepresentations when purchasing Cardinal stock"); or that (iii) Plaintiffs' investment decisions remained consistent during and after the Class Period, demonstrating a lack of reliance on the short-term price of Questcor securities, and therefore, the market's integrity.  See Safeguard Scientifics, 216 F.R.D. at 582 (evidence showing plaintiff "typically focus[ed]

1    on technical price movements rather than price" could rebut the fraud-on-the market

2    presumption rendering plaintiff an inadequate class representative); <u>Rolex</u>, 136 F.R.D. at

3    664 (evidence that plaintiff continued buying stock after class period and that plaintiff's

4    "decision to invest in the stock in [defendants] was based, in part, on his personal belief

5    that the stock represented good value in the long term" undercut showing of reliance); <u>In</u>

6    <u>re Avon Sec. Litig.</u>, 1998 WL 834366, at *7 (S.D.N.Y. Nov. 30, 1998) ("where it is

7    evident that a proposed class representative" "did not rely on the allegedly misleading

8    statement or on the integrity of the market, he is subject to unique defenses and therefore

9    an inappropriate class representative").

10       Moreover, Plaintiffs' post-Class Period investment in Questcor securities is

11   particularly relevant here where Plaintiffs baselessly assert that Questcor engaged in a

12   fraudulent scheme.  (<u>See</u> Pls.' 7/3/2013 Opp. Mot. Dismiss, at 1-2, ECF No. 105

13   (conceding "plaintiffs do not base their claims on the accuracy of any particular study"

14   but allege "defendants engaged in a scheme" "to manipulate the available science

15   supporting their rapidly growing sales staff").)  Evidence that Plaintiffs continued to

16   invest in Questcor securities even after the alleged "truth" about Questcor came to light

17   undercuts their asserted belief that Questcor engaged in fraud.

18       Thus, documents concerning Plaintiffs' investment history after the Class Period

19   may produce evidence crucial to Questcor's defense of class certification and the

20   underlying merits of the action.  Questcor must be allowed to conduct discovery to

21   develop those defenses, and Plaintiffs cannot carry their heavy burden of proving such

22   discovery irrelevant or that there is another compelling reason against production.[15]  The

23

---

24   [15] In their written responses to Requests 1-10, Plaintiffs also objected that production of
     responsive documents would be unduly burdensome.  However, Plaintiffs did not repeat

25   their burden objection in the meet and confer process let alone provide legal support or
     otherwise demonstrate why documents concerning their post-Class Period investment

26   history in a single company's securities would be unduly burdensome. In fact, any burden
     argument would demonstrate that Plaintiffs' post-Class Period investment history in

27   Questcor securities is extensive, thus further cementing the relevance of that history.
     Plaintiffs have not attempted to carry their heavy burden of showing that producing post-

28

*(cont'd)*

1 Court should compel production of documents responsive to Document Request 1, and

2 should not limit production responsive to Requests 2-10 to documents from the purported

3 Class Period.

### 3. **Plaintiffs' Argument**

5      As a preliminary matter, Request Nos. 2-10 seek information covering an

6 undefined, and seemingly indefinite, period of time. Plaintiffs objected to the unduly

7 burdensome indefinite time period but agreed to produce responsive, relevant, non-

8 privileged documents from the Class Period. In its April 21, 2014 correspondence

9 requesting a meet-and-confer, Questcor sought clarification from Plaintiffs as to their

10 basis for this temporal limitation. *See* Milstead Decl., Ex. 1. Questcor additionally noted

11 its belief that "any transactions in Questcor securities in which Plaintiffs have engaged

12 after the putative class period are relevant to issues of loss and reliance."[16] *Id.* On June

13 30, 2014, Plaintiffs provided Questcor with authority supporting their position that "[t]he

14 relevant time period for plaintiffs' purchases and sales of Questcor securities is the Class

15 Period." *See id.*, Ex. 5 at 2. Questcor responded on July 1, 2014 by declaring that it

16 "believes the meet and confer process is over as to [Request No. 1]" but failed to address

17 Plaintiffs' proposed temporal limitation with regard to Request Nos. 2-10. *Id.*, Ex. 6.

18 Plaintiffs then reiterated to Questcor that they agreed to produce documents subject to the

19 temporal limitation. *Id.*, Ex. 7. Plaintiffs additionally sought confirmation from Questcor

20

_____

21 *(cont'd from previous page)*

Class Period documents in response to Requests 1-10 would be burdensome. See Mitchell v.

22 Felker, 2010 WL 3835765, at *3 (E.D. Cal. Sept. 29, 2005.)

23 [16] Prior to this Motion, Questcor at no time indicated it contested Plaintiffs' objection to the production of pre-Class Period transaction records rendering its Motion as to these

24 materials at best premature. *See, e.g.*, Milstead Decl., Ex. 1 at 6 (arguing that "any transactions in Questcor securities in which Plaintiffs have engaged after the putative

25 class period are relevant to issues of loss and reliance"); *id.*, Ex. 2 at 4 (requesting from Plaintiffs legal authority supporting position that "Plaintiffs' post-Class Period purchases

26 and sales of Questcor stock are irrelevant to reliance and/or loss causation"). Moreover, Questcor fails to point to any Ninth Circuit authority or any case decided within the last

27 20 years in support of its position that Plaintiffs' pre-Class Period investment history is at all relevant. This is because it is not.

28

1  that all outstanding discovery issues concerning Plaintiffs' production had been addressed.

2  *Id.*  Plaintiffs accepted Questor's failure to respond to their July 3, 2014 correspondence

3  as, among other things, an acquiescence to Plaintiffs' temporal limitation and accordingly,

4  on July 24, 2014, commenced a rolling production of Plaintiffs' documents, including

5  Class Period documents responsive to some of Request Nos. 2-10.  Luedeke Decl., Ex. A.

6        Despite Plaintiffs' agreement to produce and production of Class Period

7  documents responsive to Questcor's Requests 2-10 (*see* Luedeke Decl., Ex. A, C),

8  Questcor apparently believes this to be insufficient.  Instead, Questcor claims a need for

9  Plaintiffs' pre- and post-Class Period trading records.  These materials, however, are not

10  relevant to the merits of this action or class certification.

11        Largely focusing its efforts on Plaintiffs' post-Class period records, Questcor

12  asserts that these records "may undercut Plaintiffs' showing of reliance, and relatedly,

13  render Plaintiff an inadequate class representative for the purposes of class certification."

14  Questcor is wrong.  As the overwhelming weight of authority makes clear, Plaintiffs'

15  investment decisions post-Class Period have no connection to the issue of whether

16  Plaintiffs relied during the Class Period on the statements underlying Defendants' fraud

17  or whether Plaintiffs qualify to serve as class representatives.

18        Evidence of Plaintiffs' post-Class Period Questcor trades would not assist Questcor

19  in attempting to rebut the fraud-on-the-market theory.  This presumption of reliance was

20  first explained by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 241, 108 S.

21  Ct. 978, 99 L. Ed. 2d 194 (1988), and was reaffirmed just recently.  *Halliburton Co. v.*

22  *Erica P. John Fund, Inc.*, __ U.S. __, 134 S. Ct. 2398, 2401-13, 189 L. Ed. 2d 339 (2014);

23  *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __U.S.__, 133 S. Ct. 1184, 1192,

24  185 L. Ed. 2d 308 (2013) ("The fraud-on-the-market theory rests on the premise that

25  certain well developed markets are efficient processors of public information.  In such

26  markets, the 'market price of shares' will 'reflec[t] all publicly available information.'").

27  In other words, where an efficient market exists, "courts may presume that investors who

28                                             31

1  traded securities in that market relied on public, material misrepresentations regarding

2  those securities." *Amgen*, 133 S. Ct. at 1192.  To rebut the presumption of reliance under

3  *Basic*, Questcor must show that (1) "'the "market makers" were privy to the

4  truth . . . , and thus that the market price would not be affected by [defendants']

5  misrepresentations; (2) the truth had 'credibly entered the market and dissipated the

6  effects of the misstatements'; or (3) something severed 'the link between the alleged

7  misrepresentation and either the price received (or paid) by the plaintiff.'"  *Lawrence E.*

8  *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 931 (N.D. Ill. 2010).

9  (quoting *Basic*, 485 U.S. at 248-49).  Evidence of post-Class Period trading does none of

10  these things.

11       Although Questcor speculates that post-Class Period trades may sever the

12  presumption of reliance, and relatedly, render Plaintiffs atypical, it fails to inform the

13  Court of the vast weight of authority that undercuts this proposition.[17]  *See McGuire*,

14  2008 U.S. Dist. LEXIS 14713, at *7 ("Courts have repeatedly rejected the argument that

15  a plaintiff's post-class period transactions in a defendant company's securities are

16  inconsistent with a claim of fraud or raise questions as to the plaintiff's adequacy and

17  typicality.").  Courts around the country routinely hold that:

18            "[T]he fact that a putative class representative purchased

19            additional shares in reliance on the integrity of the market after

20            the disclosure of corrective information has no bearing on

21            whether or not [the representative] relied on the integrity of the

22            market during the class period, that is, before the information at

---

[17]  "'[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.' . . . A plaintiff may be found to be atypical if it would be subject to unique defenses such that absent class members will suffer because that plaintiff will be preoccupied with defenses unique to it."  *Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 145971, at *8-*9 (C.D. Cal. Aug. 27, 2010).

32

1  issue was corrected or changed. In other words, the fact that an

2  investor purchased additional shares upon learning the new

3  information does not mean that he or she did not rely on the

4  integrity of the market in purchasing shares before the new

5  information was known. The post-disclosure purchase of the

6  additional shares therefore will not necessarily present

7  individual issues of reliance that render the investor atypical or

8  inadequate to represent class members who did not purchase

9  such additional shares."

10  *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 172 (N.D. Ill. 2009) (quoting *In re Monster*

11  *Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008)); *see also Middlesex*, 2010

12  U.S. Dist. LEXIS 145971, at *11-*13 (finding plaintiff's "post-disclosure purchases do

13  not defeat typicality"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586 (C.D.

14  Cal. 2009) (granting class certification over Skadden's objections based on, among other

15  things, post-class period purchases); *In re Merck & Co. Sec., Derivative & "ERISA"*

16  *Litig.*, No. MDL 1658 (SRC), 2013 U.S. Dist. LEXIS 13511, at *45-*46 (D.N.J. Jan. 30,

17  2013) ("For example, the post-disclosure purchases by Reynolds and MPERS have 'no

18  bearing on whether or not [they] relied on the integrity of the market during the class

19  period.'") (citation omitted); *Fry v. UAL Corp.*, 136 F.R.D. 626, 632 (N.D. Ill. 1991)

20  ("Because subsequent purchases by the plaintiffs are irrelevant to the liability of UAL

21  with regard to alleged misrepresentations effecting the earlier sales of securities by the

22  plaintiffs, such purchases do not render the claims of Fry and Dwyer atypical."); *Ross v.*

23  *Abercrombie & Fitch Co.*, 257 F.R.D. 435, 446 (S.D. Ohio 2009) (granting class

24  certification over Skadden's objections and finding a post-class period purchase six days

25  after the class period to be irrelevant); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46-47

26  (S.D.N.Y. 2012) ("Defendants' arguments [regarding post-disclosure investments in

27  Pfizer] do not establish that TRSL is subject to a unique defense"); *In re Bally Mfg. Sec.*

28

*Corp. Litig.*, 141 F.R.D. 262, 269 n.7 (N.D. Ill. 1992) ("Bally's contention that plaintiff Karinsky's claims are atypical because he purchased stock ***after*** the proposed class period is unavailing."); *In re Firstplus Fin Grp., Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *16-*17 (N.D. Tex. Oct. 23, 2002) (disagreeing with defendants that post-class period purchases present a unique defense that destroys typicality).  Plaintiffs make no claims concerning post-Class Period statements and it defies logic to presume that Plaintiffs' post-Class Period trading records could have any bearing on whether Plaintiffs relied on Defendants' Class Period false statements or the integrity of the market.  *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005) ("Reliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market.").  Accordingly, Plaintiffs' post-Class Period transactions in Questcor securities are irrelevant to reliance.

In fact, "post-disclosure purchases may well make sound economic sense in an efficient market because the market reflects news of any corrective disclosures in the stock price, typically lowering the stock price." *Computer Sci.*, 288 F.R.D. at 124; *see, e.g.*, *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) ("'Rolling over' an option in an effort to cover some losses is a common investment strategy, and does not demonstrate that a plaintiff failed to rely on the integrity of the market."); *In re Atlantic Fin. Fed. Sec. Litig.*, No. 89-0645, 1990 U.S. Dist. LEXIS 15965, at *10 (E.D. Pa. Nov. 28, 1990) ("I cannot infer that the integrity of the market price was irrelevant to these Plaintiffs solely because they made purchases after disclosure of the alleged fraud. . . . It is plausible that Plaintiffs thought once the fraud was disclosed, the true value of the stock would become apparent, the market price would adjust accordingly, and Plaintiffs could decrease their losses by further purchases."); *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 209 (D.R.I. 2005) (finding that "the fact that Bear Sterns concluded, for example, that Textron stock was a good buy at $32.77, following full disclosure, is essentially

34

1  irrelevant to the question whether it relied on misleading information in buying Textron

2  stock at, for example, $50.51 during the Class Period").

3       Defendants have no basis for believing that Plaintiffs are not appropriate class

4  representatives, and the mere "possibility" that discovery sought could reveal a unique

5  trading strategy is simply not enough to warrant the burden involved with providing such

6  discovery.  Indeed, *In re Connectics Corp. Sec. Litig.*, 257 F.R.D. 572, 576-77 (N.D. Cal.

7  2009), a case that Questcor states "collect[s] cases where 'district courts have concluded

8  that post-adverse disclosure purchasers cannot be certified as class representatives'"

9  (Milstead Decl., Ex. 1) soundly rejects Questcor's argument that post-disclosure

10 purchases defeat typicality.  While the *Connectics* court recognized that contrary

11 authority exists – including *In re Valence Tech, Sec. Litig.*, No. C 95-20459 JW, 1996

12 U.S. Dist LEXIS 21774 (N.D. Cal. Mar. 14, 1996), a much earlier decision by the

13 Northern District of California – it held that the "the weight of authority appears to favor

14 the position that the purchase of stock after a partial disclosure is not a per-se bar to

15 satisfying the typicality requirement."  *Connectics*, 257 F.R.D. at 577; *see also Middlesex*

16 *Cnty.*, 2010 U.S. Dist. LEXIS 145971, at *11-*13 (finding plaintiff's "post-disclosure

17 purchases do not defeat typicality").

18       Accordingly, Plaintiffs' continued trading of  Questcor's stock after the Class

19 Period – to the extent it even occurred – has no bearing on this litigation or Plaintiffs'

20 reliance on Defendants' false and misleading statements and is, therefore, irrelevant.

21 Request Nos. 1-10 which seek this information are designed to harass and burden

22 Plaintiffs with unnecessary discovery and should be denied in their entirety.

23       **B.    Requests for Production 23-27, 33**

24            **1.    Requests at Issue and Responses**

25 **Document Request 23**

26       ALL DOCUMENTS or COMMUNICATIONS upon which YOU relied in drafting

27 the CAC.

28                                   35

1 **<u>Plaintiffs' Responses and Objections</u>**

2      Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

3 Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it is

4 duplicative of other requests. Moreover, Lead Plaintiff objects to this Request to the

5 extent it seeks material protected by the attorney-client privilege and/or attorney work-

6 product doctrine. Lead Plaintiff also objects to this request on the grounds that non-

7 privileged documents referenced in the CAC are publicly available.

8 **<u>Document Request 24</u>**

9      ALL DOCUMENTS or COMMUNICATIONS CONCERNING each allegation in

10 the CAC.

11 **<u>Plaintiffs' Responses and Objections</u>**

12      Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

13 Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it is

14 duplicative of other requests. Moreover, Lead Plaintiff objects to this Request to the

15 extent it seeks material protected by the attorney-client privilege and/or attorney work-

16 product doctrine. Lead Plaintiff also objects to this request on the grounds that non-

17 privileged documents referenced in the CAC are publicly available.

18 **<u>Document Request 25</u>**

19      ALL DOCUMENTS or COMMUNICATIONS CONCERNING the sources of the

20 allegations in Paragraphs 39-43 and/or 46-49 of the CAC.

21 **<u>Plaintiffs' Responses and Objections</u>**

22      Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

23 Plaintiff objects to this Request as unduly burdensome and overly broad to the extent it is

24 duplicative of other requests. Moreover, Lead Plaintiff objects to this Request to the

25 extent it seeks material protected by the attorney-client privilege and/or attorney work-

26 product doctrine. Lead Plaintiff also objects to this request on the grounds that non-

27 privileged documents referenced in the CAC are publicly available.

28

**Document Request 26**

ALL DOCUMENTS or COMMUNICATIONS sufficient to identify the "current best practices required by FDA regulations," referenced in paragraph 36 of the CAC.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as premature, insofar as the allegations in ¶ 36 of the CAC will likely be the subject of expert opinion and testimony.  Moreover, Lead Plaintiff objects to this Request to the extent it seeks material protected by the attorney-client privilege and/or attorney work-product doctrine.  Lead Plaintiff also objects to this request on the grounds that non-privileged documents referenced in the CAC, such as the Food and Drug Administration regulations, are publicly available.

**Document Request 27**

ALL DOCUMENTS or COMMUNICATIONS sufficient to identify the "accepted medical practice," referenced in paragraph 37 of the CAC.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as premature, insofar as the allegations in ¶ 37 of the CAC will likely be the subject of expert opinion and testimony.  Moreover, Lead Plaintiff objects to this Request to the extent it seeks material protected by the attorney-client privilege and/or attorney work-product doctrine.  Lead Plaintiff also objects to this request on the grounds that non-privileged documents referenced in the CAC, such as the Food and Drug Administration regulations, are publicly available.

**Document Request 33**

ALL DOCUMENTS CONCERNING any information that leads YOU to believe that YOUR claims are typical of all purported class members.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

37

1   Plaintiff objects to this Request as premature, insofar as the allegations in ¶ 37 of the

2   CAC will likely be the subject of expert opinion and testimony.  Moreover, Lead Plaintiff

3   objects to this Request to the extent it seeks material protected by the attorney-client

4   privilege and/or attorney work-product doctrine.  Lead Plaintiff also objects to this

5   request on the grounds that non-privileged documents referenced in the CAC, such as the

6   Food and Drug Administration regulations, are publicly available.

7                         2.   **Questcor's Argument**

8          Questcor's Document Requests 23-27, and 33 request Plaintiffs produce the

9   documents that purportedly support the substantive and class action allegations Plaintiffs

10  assert in the Complaint.  Rather than producing support for the claims they have made in

11  this action, or admitting that no such support exists, Plaintiffs instead contend, without

12  producing a supporting privilege log, that the attorney work-product doctrine protects

13  them from producing certain supportive documents.  Plaintiffs further contend that all

14  other supportive documents are publicly available and therefore need not be produced.

15  Neither one of Plaintiffs' objections is well-taken under the law.

16         First, based on the undisputed notion that "Defendants are entitled to know the

17  factual basis of Plaintiffs' claims in order to prepare for trial," courts regularly require

18  plaintiffs to produce "documents that support Plaintiffs' allegations in the [complaint],

19  whether they are in Defendants' possession or in the public domain." Plumbers, 2005

20  WL 1459555, at *6 (citing St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198

21  F.R.D. 508, 513 (N.D. Iowa 2000) ("It is not usually a ground for objection that the

22  information is equally available to the [propounding party] or is a matter of public

23  record."); Nat'l Academy of Recording Arts & Scis., Inc. v. On Point Events, LP, 256

24  F.R.D. 678, 682 (C.D. Cal. 2009) ("[T]o the extent defendant objects that certain

25  request … seek information equally available to plaintiff, courts have unambiguously

26  stated that this exact objection is insufficient to resist a discovery request."); Hill v. Asset

27  Acceptance, LLC, 2014 WL 3014945, at *7 (S.D. Cal. July 3, 2014) (collecting cases and

28

                                             38

1 holding responding party's "objection that the court records are publicly available to

2 [requesting party] is not persuasive").

3       Second, because "underlying fact documents cannot be shielded from discovery"

4 and "[t]here is nothing unusual about a discovery request asking Plaintiffs to produce or

5 identify documents relating to or supporting allegations made in their" complaint, courts

6 also routinely reject the attorney work-product doctrine as a basis for refusing to produce

7 documents that support the allegations in a complaint holding that such a request does not

8 reveal an attorney's thought process.  See e.g., Plumbers, 2005 WL 1459555, at *6;

9 Gonzalez v. ETourandTravel, Inc., 2014 WL 1250034, at *2-3 (M.D. Fla. Mar. 26, 2014)

10 (overruling assertion of attorney work-product doctrine in response to document requests

11 seeking all documents that "in any way relates to, references, describes, supports, refutes

12 or pertains to any of the allegations set forth" in the complaint); Coleman v. Dental Org.

13 for Conscious Sedation, LLC, 2011 WL 2600407 (E.D. Mo. June 29, 2011) (same).

14       Rather, courts have compelled production of documents that support a party's

15 claims noting that "[a]ny insight into counsel's understanding of the case" that such a

16 request may reveal is "outweighed by the contribution to the efficacious operation of the

17 judicial system which expedited disclosure provides." Mead Corp. v. Riverwood Natural

18 Resources Corp., 145 F.R.D. 512, 521 (D. Minn. 1992) (compelling production of

19 documents relied upon by defendant in asserting affirmative defense, holding that

20 plaintiff is "attempting to obtain non-privileged, factual evidentiary material which forms

21 factual basis for asserting defenses which will be ultimately disclosed.  Any insight into

22 counsel's understanding of the case or of defenses is outweighed by contribution to the

23 efficacious operation of the judicial system which expedited disclosure provides"); In re

24 Jet Network, 2012 WL 2998610, at *5 (rejecting application of attorney work-product

25 doctrine, noting litigation "should not be a game of hide the ball," and "[o]nce both sides

26 have a set of the relevant documents, the [d]efendants will have a fuller picture of what

27 the [t]rustee is relying upon to support his allegations" and "depositions can then proceed

28                                          39

961695_1

1  far more efficiently and this proceeding can move towards settlement or trial").

2  In their June 30, 2014 correspondence, Plaintiffs cited a single case, <u>Central Valley</u>

3  <u>Chrysler-Jeep v. Witherspoon</u>, 2006 WL 2600149 (E.D. Cal. Sept. 11, 2006), in support

4  of their assertion that the attorney-work product protects Plaintiffs from producing

5  documents that support their claims.  (Milstead Decl. Ex. 5, at 2.)  However, <u>Central</u>

6  <u>Valley</u> supports Questcor's position.  In that case, defendants propounded discovery

7  seeking documents "related to" claims in the complaint.  The court rejected plaintiff's

8  invocation of the attorney work-product doctrine, noting that defendants do not seek

9  documents "such as attorney notes or communications analyzing the legal merits of these

10  contentions."  <u>Id.</u> at *3.  Thus, the court held that the attorney work-product doctrine is

11  not applicable where "Defendants do not couch their request for documents in a manner

12  that forces Plaintiffs to disclose their counsel's mental impressions" or reveal "an

13  attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and

14  weaknesses of his case, and the inferences he draws from interviews of witnesses."  <u>Id.</u>

15  Here, as in <u>Central Valley</u>, Questcor does not seek the production of documents

16  "such as attorney notes or communications analyzing the legal merits of these

17  contentions."  <u>Id.</u> at *3.  Nor does Questcor seek a "compilation of documents" that

18  would "reveal [counsel's] legal strategy, [their] intended lines of proof, [their] evaluation

19  of the strengths and weaknesses of his case," or "inferences [they] draw[] from interviews

20  of witnesses."  <u>Id.</u>  Instead, as clarified in its correspondence, Questcor only "seeks

21  various documents on which Plaintiffs relied in drafting the CAC."  (Milstead Decl. Ex. 1,

22  at 5.)  "Defendants are entitled to know the factual basis of Plaintiffs' claims" and

23  Plaintiffs cannot misuse the work-product doctrine to avoid producing documentary

24  support for their claims.  <u>Plumbers & Pipefitters</u>, 2005 WL 14959555, at *6 (attorney

25  work-product doctrine does not apply to a situation "where Plaintiffs [are] not requested

26  to produce a compilation of documents" but instead, "'merely require[d] … to produce …

27  documents that support or relate to various allegations made in the [complaint]").  The

28

40

1  Court should compel production of documents responsive to Requests 23-27 and 33

2  within two weeks of the entry of the order compelling production.

3              **3.    Plaintiffs' Argument**

4       As with Interrogatories 1 and 3, Questcor again seeks to evade its own

5  investigatory costs and obligations and ride Plaintiffs' coattails by way of Request Nos.

6  23-27 and 33. This is not permitted by the work product doctrine where, as here, the

7  requests are directed at counsel's legal analysis. Who counsel spoke with and what they

8  were told is classic attorney work product. *See MTI II*, 2002 U.S. Dist. LEXIS 13015, at

9  *7-*10.

10      Request Nos. 23-27, for example, generally seek all documents or communications

11  that support any allegation in Plaintiffs' Complaint, including those concerning the

12  sources of certain allegations. As written, these broad Requests would necessarily

13  include Plaintiffs' counsel's internal email communications, investigation memos, mental

14  impressions, attorney notes, legal opinions, interviews, and litigation strategies regarding

15  any aspect of counsel's legal analysis prior to filing the Complaint. Courts have

16  uniformly found that such material is "exactly the type of information protected by the

17  work product privilege." *Regions*, 2012 U.S. Dist. LEXIS 130002, at *9-*10; *see also*

18  *Miller v. Ventro Corp.*, No. C 01-01287 SBA (EDL), 2004 U.S. Dist. LEXIS 6913, at *8-

19  *9 (N.D. Cal. Apr. 21, 2004) ("Plaintiffs need not disclose that counsel spoke to certain

20  witnesses, or the substance of any interviews" and "need not link up any particular CW

21  with a paragraph in the complaint, and may identify the witnesses in any order.");

22  *Harmonic*, 245 F.R.D. at 427 (finding that "preliminary notes or other memoranda

23  written during the interviews of these witnesses . . . would be considered protected work

24  product"); *Cent. Valley Chrysler-Jeep v. Witherspoon*, No. CV F 04-6663 AWI LJO,

25  2006 U.S. Dist. LEXIS 67933, at *10-*11 (E.D. Cal. Sept. 11, 2006) ("Discovery of an

26  attorney's selection and compilation of documents is prohibited to the extent it would

27  reveal 'an attorney's legal strategy, his intended lines of proof, his evaluation of the

28                                    41

1  strengths and weaknesses of his case, and the inferences he draws from interviews of

2  witnesses.'") (citation omitted).[18]

3       Moreover, Questcor fails to identify any meaningful hardship that would justify

4  piercing the work product protection afforded these materials. *See Cent. Valley Chrysler-*

5  *Jeep*, 2006 U.S. Dist. LEXIS 67933, at *10-*11 ("Under Rule 26(b)(3), 'documents and

6  tangible things prepared by a party or his representative in anticipation of litigation,' may

7  not be ordered produced unless the party seeking them demonstrates "'substantial need

8  [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the

9  materials by other means."'").  Indeed, many of the documents Questcor seeks through

10 Requests 23-27 and 33 are either specifically identified in the Complaint and available to

11 Questcor, already in Questcor's possession, or equally accessible and publically available

12 to it.  For example, Plaintiffs have provided Questcor with all documents they have

13 obtained from third parties that have been subpoenaed.  Moreover, as previously

14 discussed, Plaintiffs' Initial Disclosures list the names of individuals and entities

15 Plaintiffs believe are likely to have discoverable information, including all those that

16 Plaintiffs have interviewed.[19]  Finally, Questcor has unfettered access to each of its public

17 filings with the Securities and Exchange Commission, press releases, conference call

18 transcripts and other Company materials that may have been relied upon in the Complaint.

---

19

20  [18]  Request No. 33 similarly seeks "any information that leads YOU to believe YOUR claims are typical of all purported class members."  Aside from being hopelessly vague,

21  this Request infringes directly upon Plaintiffs' counsel's analysis of the legal merits regarding typicality.

22  [19]  Request No. 25, for example, asked Plaintiffs to produce "ALL DOCUMENTS or

23  COMMUNICATIONS CONCERNING the sources of the allegations in Paragraphs 39-43 and/or 46-49 of the [Complaint]."  The allegations contained in these paragraphs relate

24  primarily to general Company practices, including Questcor's use of paid consultants to promote Acthar, and the composition and frequency of Company meetings.  Plaintiffs'

25  Initial Disclosures, which Plaintiffs have methodically broken down into specific categories, contain a subgroup of individuals described as "Current and Former Questcor

26  Directors, Officers, Employees, Representatives, Contactors and Associated Physicians." *See* Luedeke Decl., Ex. B.  From this list, Questcor, in a much better position than

27  Plaintiffs to know what type of knowledge these individuals possess, can glean the sources of the information it seeks with limited effort.

28
                                    42

*See, e.g., Torres*, 2010 U.S. Dist. LEXIS 87621, at *18 (holding plaintiffs "[had] not shown their compelling need for the materials" to overcome work product protection because they had "obtained the same information through other discovery or public information"); *Baldoni*, 2007 U.S. Dist. LEXIS 14127, at *21-*23 (granting in part a motion for a protective order, resulting in defendant not responding to certain interrogatories, because "plaintiff [had] already obtained evidence from  the public realm," and "[t]he information sought [was] not tailored…with any more precision than the information already in plaintiff's possession or in the public realm").  In fact, the only documents potentially unavailable to Questor are those clearly subject to work product protection for which Questcor has not demonstrated a substantial need or undue hardship in obtaining.  *See Regions*, 2012 U.S. Dist. LEXIS 130002, at *12 ("Ultimately, Defendants show no 'substantial need for the particular information sought, beyond [their need to] reduc[e] their investigative costs by riding on Plaintiffs' coattails[.]'  Thus, Defendants have not met their burden of showing the work product protection should be invaded.").[20]

Questcor's Motion with respect to Request No. 33 is also unreasonably premature.  During the parties' April 30, 2014 meet-and-confer, Plaintiffs informed Questcor that beyond the production of Class Period transaction records that Plaintiffs had already agreed to produce pursuant to Request Nos. 2-10, Plaintiffs were unaware of any documents responsive to Request No. 33.  Subsequent to that April 30 conference, Questcor made no further objections to Plaintiffs' Response, leaving Plaintiffs to presume that their concession of Class Period transactions records would satisfy Request No. 33.  By failing to make reasonable efforts to resolve its remaining concerns regarding Request

---

[20]   Request Nos. 26, 27 and 33 concern allegations that will be proven or disproven with expert testimony.  The cut-off for expert discovery in this action is currently set for April 14, 2015.  *See* Milstead Decl., Ex. 8.  Aside from documents reviewed by Plaintiffs' counsel concerning Food and Drug Administration regulations, Plaintiffs currently possess no additional documents responsive to these requests.

No. 33, or even making Plaintiffs aware of the existence of those ongoing concerns, Questcor abandoned its discovery obligations as to this Request and prematurely sought Court intervention.

Accordingly, the Court should deny Questcor's Motion as to Requests 23-27 and 33.

**V.  Questcor's Motion to Compel Production of Documents or Supplemental Responses to Document Requests 2-22, 28-30, 31-32, 34-36, and 43**

**A.  Document Requests At Issue**

**Document Request 11**

ALL COMMUNICATIONS between or among YOU and QUESTCOR.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request as it seeks material protected by the attorney-client privilege and/or attorney work-product doctrine.

**Document Request 12**

ALL COMMUNICATIONS between or among YOU and the INDIVIDUAL DEFENDANTS.

**Plaintiffs' Responses and Objections**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff objects to this Request to the extent it seeks material protected by the attorney-client privilege and/or attorney work-product doctrine.  Lead Plaintiff further objects to this Request because it is premature to the extent it seeks documents that are subject to ongoing or future discovery – including information obtained during the depositions of, and document production by Defendant and various third parties – or expert opinion.

**Document Request 13**

ALL COMMUNICATIONS between or among YOU and Streetsweeper.org, identified in Paragraph 86 of the CAC, or anyone affiliated with Streetsweeper.org, CONCERNING QUESTCOR or QUESTCOR SECURITIES.

44

1  **Plaintiffs' Responses and Objections**

2  Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

3  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

4  broad in its use of "affiliated with." Lead Plaintiff further objects to this Request to the

5  extent it seeks material protected by the attorney-client privilege and/or attorney work-

6  product doctrine.

7  Subject to and without waiving the foregoing objections, Lead Plaintiff will

8  produce responsive, relevant, non-privileged documents to the extent such documents

9  exist and are in its possession, custody or control.

10  **Document Request 14**

11  ALL COMMUNICATIONS between or among YOU and Citron Research,

12  identified in Paragraph 11 of the CAC, or anyone affiliated with Citron Research,

13  CONCERNING QUESTCOR or QUESTCOR SECURITIES.

14  **Plaintiffs' Responses and Objections**

15  Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead

16  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

17  broad in its use of "affiliated with." Lead Plaintiff further objects to this Request to the

18  extent it seeks material protected by the attorney-client privilege and/or attorney work-

19  product doctrine.

20  Subject to and without waiving the foregoing objections, Lead Plaintiff will

21  produce responsive, relevant, non-privileged documents to the extent such documents

22  exist and are in its possession, custody or control.

23  **Document Request 15**

24  ALL COMMUNICATIONS between or among YOU and any third party medical

25  insurance company, including, but not limited to, Aetna Inc., Blue Cross Blue Shield of

26  Michigan, UnitedHealthcare, or Humana, CONCERNING QUESTCOR.

27  **Plaintiffs' Responses and Objections**

28

45

961695_1

1   Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

2   Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

3   broad in its use of "medical insurance company."  Lead Plaintiff further objects to this

4   Request to the extent it seeks material protected by the attorney-client privilege and/or

5   attorney work-product doctrine.

6   Subject to and without waiving the foregoing objections, Lead Plaintiff will

7   produce responsive, relevant, non-privileged documents to the extent such documents

8   exist and are in its possession, custody or control.

9   **Document Request 16**

10   ALL COMMUNICATIONS between or among YOU and any physicians

11   CONCERNING QUESTCOR or QUESTCOR SECURITIES.

12   **Plaintiffs' Responses and Objections**

13   Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

14   Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

15   broad in its use of "physicians."  Lead Plaintiff further objects to this Request to the

16   extent it seeks material protected by the attorney-client privilege and/or attorney work-

17   product doctrine.

18   Subject to and without waiving the foregoing objections, Lead Plaintiff will

19   produce responsive, relevant, non-privileged documents to the extent such documents

20   exist and are in its possession, custody or control.

21   **Document Request 17**

22   ALL COMMUNICATIONS between or among YOU and any medical researchers

23   CONCERNING QUESTCOR or QUESTCOR SECURITIES.

24   **Plaintiffs' Responses and Objections**

25   Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

26   Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

27   broad in its use of "medical researchers."  Lead Plaintiff further objects to this Request to

28

46

1  the extent it seeks material protected by the attorney-client privilege and/or attorney

2  work-product doctrine.

3       Subject to and without waiving the foregoing objections, Lead Plaintiff will

4  produce responsive, relevant, non-privileged documents to the extent such documents

5  exist and are in its possession, custody or control.

6       **Document Request 18**

7       ALL COMMUNICATIONS between or among YOU and any Acthar patients

8  CONCERNING QUESTCOR or QUESTCOR SECURITIES.

9       **Plaintiffs' Responses and Objections**

10      Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

11  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

12  broad in its use of "Acthar patients."  Lead Plaintiff further objects to this Request to the

13  extent it seeks material protected by the attorney-client privilege and/or attorney work-

14  product doctrine.

15      Subject to and without waiving the foregoing objections, Lead Plaintiff will

16  produce responsive, relevant, non-privileged documents to the extent such documents

17  exist and are in its possession, custody or control.

18      **Document Request 19**

19      ALL COMMUNICATIONS between or among YOU and any current and/or

20  former QUESTCOR employees CONCERNING QUESTCOR or QUESTCOR

21  SECURITIES.

22      **Plaintiffs' Responses and Objections**

23      Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

24  Plaintiff objects to this Request to the extent it seeks material protected by the attorney-

25  client privilege and/or attorney work-product doctrine.

26      Subject to and without waiving the foregoing objections, Lead Plaintiff will

27  produce responsive, relevant, non-privileged documents to the extent such documents

28

47

1  exist and are in its possession, custody or control.

2  **Document Request 20**

3  ALL COMMUNICATIONS between or among YOU and any stock analysts

4  CONCERNING QUESTCOR or QUESTCOR SECURITIES.

5  **Plaintiffs' Responses and Objections**

6  Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

7  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

8  broad in its use of "stock analysts."  Lead Plaintiff further objects to this Request to the

9  extent it seeks material protected by the attorney-client privilege and/or attorney work-

10 product doctrine.

11 Subject to and without waiving the foregoing objections, Lead Plaintiff will

12 produce responsive, relevant, non-privileged documents to the extent such documents

13 exist and are in its possession, custody or control.

14 **Document Request 21**

15 ALL COMMUNICATIONS between or among YOU and any known or reputed

16 short seller CONCERNING QUESTCOR or QUESTCOR SECURITIES.

17 **Plaintiffs' Responses and Objections**

18 Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

19 Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

20 broad in its use of "known or reputed short seller."  Lead Plaintiff further objects to this

21 Request to the extent it seeks material protected by the attorney-client privilege and/or

22 attorney work-product doctrine.

23 **Document Request 22**

24 ALL COMMUNICATIONS between or among YOU and any other third party

25 CONCERNING QUESTCOR or QUESTCOR SECURITIES.

26 **Plaintiffs' Responses and Objections**

27 Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

28

48

1  Plaintiff further objects to this Request to the extent it seeks material protected by the

2  attorney-client privilege and/or attorney work-product doctrine.

3       Subject to and without waiving the foregoing objections, Lead Plaintiff will

4  produce responsive, relevant, non-privileged documents to the extent such documents

5  exist and are in its possession, custody or control.

6  **Document Request 28**

7       ALL DOCUMENTS or COMMUNICATIONS related to YOUR claim that YOU

8  have suffered damages.

9  **Plaintiffs' Responses and Objections**

10       Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

11  Plaintiff objects to the term "damages" as vague and ambiguous.  Lead Plaintiff also

12  objects to the extent this Request seeks to impose any requirement beyond that

13  permissible under Federal Rules of Civil Procedure 26 and/or the scheduling order in this

14  case.  Lead Plaintiff further objects to this request on the grounds that it is premature

15  insofar as the calculation of damages will be the subject of expert analysis and testimony.

16       Subject to and without waiving the foregoing objections, Lead Plaintiff will

17  produce responsive, relevant, non-privileged documents to the extent such documents

18  exist and are in its possession, custody or control.

19  **Document Request 29**

20       ALL DOCUMENTS CONCERNING YOUR decision to seek to serve as a class

21  representative in this action, or otherwise to commence litigation against QUESTCOR,

22  including but not limited to:

23       a.    The identity of the individuals responsible for the decision to bring this

24  action;

25       b.    When YOU decided to bring this action;

26       c.    The basis on which YOU decided to bring this action.

27  **Plaintiffs' Responses and Objections**

28

49

1  Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead
2  Plaintiff objects to this Request as premature insofar as no motion for class certification
3  has yet been filed.  Moreover, Lead Plaintiff objects to the phrase "bring this action" as
4  vague and ambiguous.

5  Subject to and without waiving the foregoing objections, Lead Plaintiff will
6  produce responsive, relevant, non-privileged documents to the extent such documents
7  exist and are in its possession, custody or control.

8  **Document Request 30**

9  ALL DOCUMENTS CONCERNING any inquiries or investigations conducted by
10  YOU in connection with the allegations in the CAC.

11  **Plaintiffs' Responses and Objections**

12  Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead
13  Plaintiff objects to this Request is hopelessly vague and overbroad, rending it
14  unintelligible as drafted.  Lead Plaintiff also objects to this Request to the extent it calls
15  for privileged or confidential information, including information protected from
16  disclosure by the attorney-client privilege and the attorney work-product doctrine.  Lead
17  Plainitff further objects to this request on the grounds that the non-privileged documents
18  referenced in the CAC are publicly available.

19  Subject to and without waiving the foregoing objections, Lead Plaintiff will
20  produce responsive, relevant, non-privileged documents to the extent such documents
21  exist and are in its possession, custody or control.

22  **Document Request 31**

23  ALL DOCUMENTS CONCERNING YOUR relationship with any law firm
24  representing YOU in this action (including, without limitation, any individual attorney
25  who is now, or who was, associated with, or a member of, any such law firm), including,
26  but not limited to, DOCUMENTS CONCERNING:

27  a.  Any financial or other arrangements that exists or existed between YOU and

28

1  any such lawyer or law firm, whether in this action or otherwise;

2         b.      YOUR relationship with such lawyer or law firm in connection with any

3  other litigation in which such lawyer or law firm has acted on YOUR behalf; and

4         c.      Any social, familial, or other relationship that exists or has existed at any

5  time between YOU and any such lawyer or law firm.

6         **Plaintiffs' Responses and Objections**

7         Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

8  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

9  broad in its use of the terms "financial," "otherwise," "other litigation," and "other

10  relationship."  Lead Plaintiff further objects to this Request on privacy grounds and to the

11  extent that it seeks or requires disclosure of information which is protected from

12  disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any

13  other applicable privilege or immunity.

14         **Document Request 32**

15         ALL DOCUMENTS CONCERNING the actual or contemplated retainer of

16  counsel by YOU in this action, including, but not limited to, DOCUMENTS

17  CONCERNING:

18         a.      Any arrangement to pay a fee, including a legal fee, to anyone with respect

19  to this action;

20         b.      The person who will advance and who is responsible for payment of the fees,

21  costs, and expenses incurred in connection with this action;

22         c.      The person who will share in the recovery; and

23         d.      Any arrangement to share a fee in this action with any person not a member

24  of YOUR counsels' firms.

25         **Plaintiffs' Responses and Objections**

26         Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

27  Plaintiff objects to this Request as vague, ambiguous, unduly burdensome and overly

28                                                 51

1  broad in its use of the terms "fees," "costs," "expenses," and "recovery."  Lead Plaintiff

2  further objects to this Request on privacy grounds and to the extent that it seeks or

3  requires disclosure of information which is protected from disclosure by the attorney-

4  client privilege, the attorney work-product doctrine, and/or any other applicable privilege

5  or immunity.

6  **Document Request 34**

7       ALL DOCUMENTS CONCERNING any COMMUNICATION, relationship or

8  agreements between YOU and YOUR counsel, on the one hand, and any other Plaintiff,

9  party or members of the proposed class in the action, on the other hand, CONCERNING

10  the subject matter of this action.

11  **Plaintiffs' Responses and Objections**

12       Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

13  Plaintiff further objects to this Request to the extent it is unduly burdensome, seeks

14  documents not relevant to any claim or defense and calls for the production of documents

15  not within Lead Plaintiff's possession, custody or control.  In addition,  Lead Plaintiff

16  objects to the to this Request on privacy grounds and to the extent that it seeks or requires

17  disclosure of information which is protected from disclosure by the attorney-client

18  privilege, the attorney work-product doctrine, and/or any other applicable privilege or

19  immunity.

20  **Document Request 35**

21       ALL DOCUMENTS CONCERNING any litigation, arbitration, or other

22  proceeding  (excluding the above-captioned action) in which YOU were an actual or

23  contemplated party or witness.

24  **Plaintiffs' Responses and Objections**

25       Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

26  Plaintiff further objects to this Request as vague, ambiguous, unduly burdensome and

27  hopelessly overbroad as it seeks all documents "CONCERNING" any "litigation,

28                         52

arbitration, or other proceeding" without any reasonable limitation in time or scope. Lead Plaintiff also objects to this Request to the extent it requests the production of documents and information that are subject to confidentiality agreements entered in any action.  Lead Plaintiff further objects to this Request as it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.   In addition, Lead Plaintiff objects to the to this Request on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege or immunity.

### Document Request 36

ALL DOCUMENTS CONCERNING any litigation, arbitration, or other proceeding within the previous ten years (excluding the above-captioned action) involving YOU pertaining to an alleged violation of any state or federal law or arising from, or related to, the purchase, sale, or other acquisition or disposition of any SECURITIES of any publicly-traded organization.

### Plaintiffs' Responses and Objections

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff further objects to this Request as vague, ambiguous, unduly burdensome and hopelessly overbroad as it seeks all documents "CONCERNING" any "litigation, arbitration, or other proceeding" without any reasonable limitation in time or scope. Lead Plaintiff also objects to this Request to the extent it requests the production of documents and information that are subject to confidentiality agreements entered in any action.  Lead Plaintiff further objects to this Request as it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.   In addition, Lead Plaintiff objects to this Request on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable

53

1   privilege or immunity.

2   **Document Request 43**

3   ALL COMMUNICATIONS between or among YOU and ALL the individuals

4   and/or entities identified in section I.C. through I.G. of YOUR INITIAL DISCLOSURES.

5   **Plaintiffs' Responses and Objections**

6   Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead

7   Plaintiff objects to this Request to the extent it seeks material protected by the attorney-

8   client privilege and/or attorney work-product doctrine.

9   Subject to and without waiving the foregoing objections, Lead Plaintiff will

10   produce responsive, relevant, non-privileged documents to the extent such documents

11   exist and are in its possession, custody or control.

12   **B.   Questcor's Argument**

13   Finally, Plaintiffs have stated they will produce documents responsive to Requests

14   2-22, 28-30, and 43 if documents exist, but to date have refused to disclose whether

15   responsive documents exist for each of the three Lead Plaintiffs and for each of those

16   twenty-five requests.  Plaintiffs have also affirmatively agreed to produce documents

17   responsive to Requests 31-32, and 34-36 but have not yet done so.  (Milstead Decl. ¶ 12.)

18   It has now been over four months since Questcor served its discovery requests and

19   Questcor has no meaningful insight to the documents it can expect to receive.  The

20   Federal Rules require greater diligence and cooperation from Plaintiffs.

21   Under Federal Rule of Civil Procedure 26(g), a party responding to document

22   requests must "make a timely, reasonable, and diligent search for all documents

23   responsive to the [propounding party's] discovery requests." <u>Zander</u>, 2011 WL 834190,

24   at *1 (compelling production of documents that "reasonably should have been located

25   months ago").  If the responding party does not find responsive documents after a timely,

26   reasonable and diligent search, the "party should so state with sufficient specificity to

27   allow the Court to determine whether the party made a reasonable inquiry and exercised

28

due diligence." <u>Rogers v. Girbuino</u>, 288 F.R.D. 469, 485 (S.D. Cal. 2012); <u>A. Farber & Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("A party responding to a Rule 34 production request … is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.") (alterations in original).  Thus, if a responding party fails to "demonstrate that a diligent search and reasonable inquiry has been made in an effort to locate the requested documents," courts have compelled the responding party to "either produce the documents, or amend their response to state that a diligent search and reasonable inquiry have been conducted, and to state the reason they are unable to comply (e.g., the document never existed; or not in their possession, custody or control)." <u>Waterbury</u>, 2008 WL 2018432, at *6.

Here, Plaintiffs have represented either in written response or during the parties' meet and confer process that they would produce documents responsive to Requests 2-22, 28-30 and 43, to the extent they exist.  (<u>See</u> Milstead Decl. ¶¶ 5-6.)  Following the April 30, 2014 meet and confer, Questcor made three separate written requests inquiring about the status of these requests.  (Milstead Decl. Exs. 2-4.)  Nearly three months have passed since Plaintiffs' representation that they would look for responsive documents.  Plaintiffs have not only failed to produce responsive documents, they have not even indicated whether responsive documents exist or even confirmed that they have in fact conducted a diligent and reasonable inquiry to find responsive documents.  Moreover, while Plaintiffs have affirmatively agreed to produce documents response to Requests 31-32, and 34-36, they have not yet done so.  Plaintiffs' continued unwillingness to provide even the most basic of information during the meet and confer process constitutes the "gamesmanship" that  "produces needless delay, wasting the Court's and the parties' time, contrary to the purpose of the" federal rules. <u>Lane</u>, 2011 WL 1004825, at *4.  The Court should not countenance Plaintiffs' approach and compel Plaintiffs, within two weeks of entry of the order, to produce documents responsive to Requests 2-22, 28-30, 31-32, 34-36, and 43 or

55

1    to promptly supplement their written responses "to state that a diligent search and

2    reasonable inquiry have been conducted, and to state the reason they are unable to

3    comply (e.g., the document never existed; or not in their possession, custody or control)."

4    Waterbury, 2008 WL 2018432, at *6.[21]

5          C.    **Plaintiffs' Argument**

6          Questcor's rash assertions regarding Plaintiffs' discovery efforts and general pace

7    of production are misguided.  Almost immediately after Plaintiffs provided authority to

8    Questcor supporting certain of Plaintiffs' objections to Questcor's Interrogatories and

9    Requests as it had requested (*see* Milstead Decl., Ex. 5), Questcor demanded Plaintiffs

10   commence their production of responsive documents, requested "additional information"

11   regarding many of Plaintiffs' objections over which Plaintiffs believed the parties had

12   reached accord, and threatened a motion to compel.  *Id.*, Ex. 6.  Within two days

13   Plaintiffs clarified that it was their understanding that the parties were in agreement that

14   Plaintiffs would "produce relevant, non-privileged documents – to the extent they exist

15   and/or for the time period April 4, 2011 through September 21, 2012 – in response to a

16   vast majority of Questcor's individual requests."  *Id.*, Ex. 7.  Plaintiffs additionally

17   notified Questcor that they were "in the process of gathering these materials and will

18   produce them as soon as possible" and sought confirmation from Questcor that all

19   outstanding issues concerning Plaintiffs' responses and objections had been addressed.

20   *Id.*  Plaintiffs' attempt at compromise, however, fell on deaf ears.  After receiving no

21   further response from Questcor, on July 24, 2014, Plaintiffs commenced Lead Plaintiff

22   West Virginia Investment Management Board's rolling production of responsive

23   documents.  Luedeke Decl., Ex. A.

24   _____

25   [21] Questcor is entitled to moving costs pursuant to Federal Rule 37(a)(5)(A) which
     provides the Court must "require the party…whose conduct necessitated the motion, the
26   party or attorney advising that conduct, or both to pay the movant's reasonable expenses
     incurred in making the motion."  Fed. R. Civ. Pro. 37(a)(5)(A).  Plaintiffs' baseless
27   objections and constant delay in responding to Questcor and providing requested
     information are not justified and have necessitated the filing of this present motion.

28                                           56

1    Despite the initiation of Plaintiffs' production, four days later Questcor served

2    Plaintiffs with this Motion.  Even while faced with Questcor's Motion, however,

3    Plaintiffs continued their good faith discovery efforts.  As such, on August 1, 2014,

4    Plaintiffs provided Questcor with Lead Plaintiff Plumbers & Pipefitters National Pension

5    Fund's initial production of documents and Plaintiff Steven Glucksberg's complete set of

6    responsive documents.  *See id.*, Ex. C.  To Plaintiffs' knowledge, Plaintiff Glucksberg is

7    the only party to this litigation that has completed its document production to date.[22]  *See*

8    *id.*

9    While Questcor's desire to begin preparing its opposition to class certification

10   appears to be the primary factor driving its discovery push, its concerns are unfounded.

11   First, the deadline for defendants to file their opposition to class certification is nearly

12   three months away.  *See* Milstead Decl., Ex. 9.  Plaintiffs have already initiated their

13   document production and anticipate substantially completing their production of all

14   relevant, non-privileged, responsive documents within three weeks.  This will allow

15   Questcor ample time to utilize Plaintiffs' documents as it deems necessary for purposes

16   of briefing its opposition.

17   Second, rather than focusing its Motion on materials that may be pertinent to class

18   certification as it could have, much of the discovery Questcor seeks to compel goes to the

19   merits of Plaintiffs' case.  Had Questcor specifically requested that Plaintiffs begin their

20   production with these types of documents, Plaintiffs could have already provided

21   Questcor with all Class Period transaction records which, in turn, would have alleviated

22   some of the concerns raised by Questcor in its Motion.  Further, since the cut-off for non-

23   expert discovery in this action is not until December 19, 2014 (*see* Milstead Decl., Ex. 8),

24   Questor could have then continued negotiating with Plaintiffs over requests not relevant

25

26   [22]  It is notable that while Questcor complains about the timeliness of Plaintiffs'
     production of documents responsive to its Requests, individual defendants did not
27   commence their production of documents in response to Lead Plaintiffs' First Set of
     Requests for the Production of Documents until July 30, 2014.  *See* Luedeke Decl., Ex. D.

28
                                              57

1  to class certification and brought a motion at some point in the future if it still deemed

2  doing so necessary.

3        Questcor's request for moving for costs pursuant to Federal Rule of Civil

4  Procedure 37(a)(5)(A) is simply irrational.  Pursuant to Rule 37(a)(5)(A), "the court must

5  not order this payment if: (i) the movant filed the motion before attempting in good faith

6  to obtain the disclosure or discovery without court action; (ii) the opposing party's

7  nondisclosure, response, or objection was substantially justified; or (iii) other

8  circumstances make an award of expenses unjust."  Should this Court not deny

9  Questcor's Motion in its entirety as Plaintiffs request, Plaintiffs' objections are certainly

10  "substantially justified."  *See Colaco v. ASIC Advantage Simplified Pension Plan*, No.

11  5:13-cv-00972-PSG, 2014 U.S. Dist. LEXIS 98185, at *9-*12 (N.D. Cal. July 18, 2014)

12  (holding that "Plaintiffs . . . were substantially justified in objecting to the RFPs" where

13  "the case law on this issue is not fully delineated or settled").  Moreover, Questcor's

14  failure to respond to Plaintiffs' good faith offers to compromise flies in the face of its

15  discovery obligations and renders its Motion premature, making an "award of expenses

16  unjust."  *See* Fed. R. Civ. P. 37(a)(5)(A).

17        For the reasons set forth herein, Plaintiffs respectfully request that the Court deny

18  Questcor's Motion to Compel in its entirety.

19

20  DATED:   August 6, 2014

21                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

22                        By: _____ */s/Peter B. Morrison*_____

23                                Peter B. Morrison
                              Attorney for Defendant
                              Questcor Pharmaceuticals, Inc.

24

25                        ROBBINS GELLER RUDMAN & DOWD LLP

26                        By: _____ */s/ Andrew J. Brown*_____

27                                Andrew J. Brown
                              Lead Counsel for Plaintiffs

28                                58